John Ronald HUDSON, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 25, 2003.

Decided June 12, 2003.

Publication Ordered Aug. 20, 2003.

---

Kevin J. Rozich, Johnstown, for appellant.

Marc A. Werlinsky and Timothy P. Wile, King of Prussia, for appellee.

Before: McGINLEY, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

John Ronald Hudson (Licensee) appeals an order of the Court of Common Pleas of Cambria County (trial court) affirming the suspension of his operating privilege for refusing to submit to a chemical blood test under 75 Pa.C.S. § 1547(b)(1).[1] Concluding the trial court lacked jurisdiction to consider the merits of the statutory appeal, we reverse the order permitting Licensee's untimely appeal and remand for entry of an order dismissing the suspension appeal.

By official notice dated November 20, 2001, the Department of Transportation (PennDOT) notified Licensee of a one-year suspension of his operating privileges based on his reported refusal to submit to chemical testing. On January 4, 2002, Licensee filed a petition for leave to appeal *nunc pro tunc* with the trial court, alleging PennDOT sent the notice of suspension to an incorrect address.

The trial court held a hearing on Licensee's petition. At the hearing, PennDOT offered into evidence two packets of documents.[2] One packet contained a copy of a change of address form completed by Licensee, which was not dated. This form listed Licensee's new address as 407 Green Valley St., Johnstown, PA, 15902. The other packet contained a copy of the notice of suspension and Form DL–26, on which Licensee's refusal was reported. Both of these documents listed Licensee's address as R 1675 Solomon Run Rd., Johnstown, PA, 15905.

At the hearing, Licensee testified he moved to his new address on November 21, 2001 the day after PennDOT's notice date. Approximately one week later, he went to a notary service to complete a change of address form. While there, a clerk informed Licensee his driving record showed a one-year suspension. In response, Licensee stated he was aware of the suspension. Upon his request, the clerk provided him with a copy of the notice of suspension, which he immediately took to his attorney's office. At the conclusion of the hearing, the trial court granted Licensee leave to appeal "now for then."

Thereafter, the trial court held a *de novo* hearing on the suspension appeal. Officer Daniel Marguccio (Officer Marguccio) testified he observed Licensee's vehicle proceeding through a construction zone, knocking aside orange construction cones in its path. When the vehicle pulled into a convenience store parking lot, the

---

**1.** Sections 1547(a) and (b) of the Vehicle Code, 75 Pa.C.S. §§ 101–9805, set forth the mechanics of the Implied Consent Law. 75 Pa.C.S. § 1547. Under these Sections, PennDOT is required to suspend a licensee's operating privilege for one year for a licensee's refusal of a police officer's request to submit to chemical testing. *Dep't of Transp., Bureau*

*of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996).

**2.** Both packets were signed and sealed by the Secretary of Transportation and the Director of the Bureau of Driver Licensing and certified in accordance with Sections 6103 and 6109 of the Judicial Code. 42 Pa.C.S. §§ 6103, 6109.

officer approached the vehicle and asked Licensee to open the door. Licensee opened the door, and Officer Marguccio "got hit with a strong odor of alcoholic beverage." R.R. at 21a. Licensee directed obscenities at the officer, refused to step out of the vehicle, and attempted to start the vehicle. The officer physically removed Licensee from the vehicle and arrested him for driving under the influence. R.R. at 21a–22a. The officer advised Licensee he was required to submit to a blood alcohol test, and that refusal to do so would result in a one year suspension of his driver's license.

Officer Marguccio then delivered Licensee to Officer Donald Robertson (Officer Robertson) for transportation to the hospital. Officer Robertson testified that, on the way to the hospital, he advised Licensee he was being taken to the hospital for a blood alcohol test. Licensee responded "he had been through this before." R.R. at 26a. While at the hospital, Officer Robertson began to prepare a DL–26 Form[3] setting forth the *O'Connell* warnings,[4] and began to read the warnings to Licensee. The officer attempted to read the warnings three times, but Licensee reached toward the officer to retrieve his wallet and driver's license, and then became belligerent. Officer Robertson physically restrained Licensee.

Licensee testified he was "willing and cooperative" because he "knew the test would pass." R.R. at 32. When asked about the incident at the hospital, Licensee stated he asked the officer for his license and the officer put it in a "wallet-like pouch" and handed it to him. *Id.* Licensee reached out to take the license, but the officer grabbed him by the arm, and slammed him to the ground. *Id.* Licensee testified he was not advised of the consequences of a refusal to submit to the blood test. R.R. 33a.

The trial court accepted the testimony of Officers Marguccio and Robertson as credible. Based on their testimony, the court determined that the officers warned Licensee of the consequences of his refusal to submit to the test and that his conduct at the hospital constituted a refusal to submit to chemical testing. R.R. at 39a. As a result, the trial court dismissed Licensee's appeal. Licensee now appeals to this Court.[5]

■ PennDOT asserts the trial court erred in permitting Licensee to file his untimely appeal because he failed to present evidence to support a finding of an administrative breakdown. PennDOT argues that without such evidence the trial court erred in granting Licensee's request.

---

**3.** Form DL–26 provides in pertinent part:

It is my duty, as a police officer, to inform you that if you refuse to submit to the chemical test your operating privilege will be suspended for a period of one year.

You have no right to speak to a lawyer, or anyone else, before taking the chemical test requested by the police officer nor do you have a right to remain silent when asked by the police officer to submit to the chemical test. Unless you agree to submit to the test requested by the police officer your conduct will be deemed to be a refusal and your operating privilege will be suspended for one year.

Supplemental Reproduced. Record. (S.R.R.) at 7b.

**4.** *See Dep't of Transp. v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

**5.** This Court's scope of review of the trial court is limited to determining whether necessary findings of fact are supported by competent, record evidence, whether the trial court committed an error of law, or abused its discretion in reaching its decision. *Todd v. Dep't of Transp., Bureau of Driver Licensing,* 555 Pa. 193, 723 A.2d 655 (1999).

We agree the trial court lacked jurisdiction to hear the merits of the statutory appeal.[6]

■ Pursuant to Sections 5571(b) and 5572 of the Judicial Code, a motorist has 30 days from the mailing date of Penn-DOT's notice of suspension to file an appeal with the trial court. 42 Pa.C.S. §§ 5571(b), 5572; *Dep't of Transp., Bureau of Driver Licensing v. Matlack*, 144 Pa.Cmwlth. 12, 600 A.2d 998 (1991) (appeal must be filed within 30 days of mailing date of suspension notice). "Appeals filed beyond the 30–day appeal period are untimely and deprive the common pleas court of subject matter jurisdiction over such appeals." *Dep't of Transp., Bureau of Driver Licensing v. Maddesi*, 138 Pa. Cmwlth. 467, 588 A.2d 580, 582 (1991).[7]

■ Further, statutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence. *Stanton v. Dep't of Transp., Bureau of Driver Licensing*, 154 Pa. Cmwlth. 350, 623 A.2d 925 (1993). By allowing a licensee to file a late appeal, the trial court extends the time in which an appeal may be filed, thereby extending itself jurisdiction it would not otherwise have. *Id.* Such an extension is appropriate only when the licensee proves that either fraud or an administrative breakdown caused the delay in filing the appeal. *Hess v. Dep't of Transp., Bureau of Driver Licensing*, 821 A.2d 663, (Pa.Cmwlth. 2003).

Here, PennDOT mailed its notice of suspension to Licensee on November 20, 2001; therefore, the statutory appeal period ended on December 20, 2001. *See* 1 Pa.C.S. § 1908 (computation of time). Unfortunately, Licensee took no formal action until after the holidays, outside the statutory appeal period.

The trial court admitted into evidence a copy of the notice of suspension sent to Licensee at R 1675 Solomon Run Rd., Johnstown, PA, 15905, on November 20, 2001. On that date, R 1675 Solomon Run Rd. was his address of record. Thus, PennDOT properly mailed the notice of suspension to Licensee's "address of record." *See* 75 Pa.C.S. § 1540(b)(1) (notice of suspension must be sent to the licensee's "address of record"); *McKeown v. Dep't of Transp.*, 144 Pa.Cmwlth. 322, 601 A.2d 486 (1991) (PennDOT is only required to notify a licensee at his "address of record"). As a practical matter, however, it is unlikely that the November 20 notice was promptly received by the relocated Licensee.

More important than the identification of dates and the computation of time is Licensee's further testimony. He went to change his address on or about November 27, 2001. While there, the clerk informed him his license was suspended for one-year. In response, Licensee stated he was already aware of the suspension. Specifically, he testified:

> When the girl that was changing my address, she punched it up that yeah I have a one year suspension coming due *and I says, yeah, I know*, we're supposed to be appealing that, and she said, well, I says, well, I didn't get a letter of this, can I have a copy of that, can you make me a copy. She said sure. So she made me a—she showed me copy and

---

6. When a trial court permits the filing of an untimely appeal, our review is limited to determining whether the trial court abused its discretion or committed an error of law. *Smith v. Dep't of Transp., Bureau of Driver Licensing*, 749 A.2d 1065 (Pa.Cmwlth.2000).

7. Questions of subject matter jurisdiction may be raised at any time, even on appeal, by the parties or by the court on its own motion. *Dep't of Transp., Bureau of Driver Licensing v. Gelormino*, 160 Pa.Cmwlth. 12, 636 A.2d 224 (1994).

then *she made me a copy, and I looked at it and I read it* and I immediately took it down to [my attorney's office] and it was down there for a little bit and I got another notice.

Hearing of January 23, 2002, Notes of Testimony at 5 (emphasis added). By his own admission, Licensee had actual notice of the suspension. *See Commonwealth v. Zimmick*, 539 Pa. 548, 653 A.2d 1217 (1995) (statements indicating knowledge of license suspension may be considered in determining whether licensee has actual notice of suspension).

Courts lack power to permit a licensee to appeal "now for then," absent proof of fraud or administrative breakdown. *Hess.* According to his own testimony, Licensee failed to prove either of these requirements. Therefore, the trial court erred in permitting Licensee's untimely appeal.

■ However, even if we agreed with Licensee's arguments on the timeliness of appeal, we could offer no relief, as his substantive contentions lack merit. First, Licensee asserts he was not informed of the consequences of his refusal to submit to chemical testing.

■ Questions of credibility and conflicts in the evidence are for the trial court to resolve, not our appellate courts. *Millili v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 111 (Pa.Cmwlth.2000). If sufficient evidence exists to support the trial court's findings, we must pay it, as fact finder, proper deference and affirm. *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

Here, Officer Marguccio and Officer Robertson testified they informed Licensee that if he refused to submit to the blood alcohol test his license would be suspended for one year. Licensee testified he was not advised of the consequences of a refusal to submit to the blood test. Rec-

onciling this conflict, the trial court found the officers' testimony credible, and determined the officers properly informed Licensee of the consequences of his refusal to submit to chemical testing. R.R. at 39a. We will not reverse that determination. *Millili.*

■ Licensee next contends his actions did not constitute a refusal to submit to chemical testing.

■ The issue of whether a motorist's conduct constitutes a refusal to submit to chemical testing is a question of law to be determined based on the facts found by the trial court. *Keenan v. Dep't of Transp., Bureau of Driver Licensing*, 657 A.2d 134 (Pa.Cmwlth.1995).

■ It is well-settled that anything less than an unqualified, unequivocal assent constitutes a refusal under Section 1547 of the Vehicle Code. *Dep't of Transp. v. Renwick*, 543 Pa. 122, 669 A.2d 934 (1996). Moreover, a motorist's refusal to submit need not be expressed in words; rather, a motorist's conduct may demonstrate a refusal to submit to chemical testing. *See, e.g., Renwick* (motorist who closed her eyes, turned her head and ignored requests to submit to testing refused to submit); *McCloskey v. Dep't of Transp., Bureau of Driver's Licensing*, 722 A.2d 1159 (Pa.Cmwlth.1999) (motorist who stalled for eight minutes after being read implied consent warnings refused to submit). "The frustration of purpose doctrine provides that a refusal under section 1547 can be implied from the conduct of the licensee which obstructs or frustrates the administration of the chemical test." *McCamey v. Commonwealth*, 144 Pa. Cmwlth. 292, 601 A.2d 471, 472, n. 2 (1991).

Here, while at the hospital, Officer Robertson attempted to read Licensee the *O'Connell* warnings three times. In response, Licensee interrupted repeatedly and caused an altercation requiring hand-

cuff restraints. The trial court found Licensee's aggressive behavior constituted a refusal to submit to testing. The court further found Licensee's actions made it impossible for Officer Robertson to wait for Licensee to verbally refuse. These findings are supported by substantial evidence and will not be disturbed on appeal. *Millili.* Accordingly, the trial court properly dismissed Licensee's suspension appeal.

Judge KELLEY concurs in the result only.

### ORDER

AND NOW, this 12th day of June, 2003, the January 23, 2002 order of the Court of Common Pleas of Cambria County is reversed, and the case is remanded for the trial court to enter an order dismissing the suspension appeal.

Jurisdiction relinquished.