Kerry **FREEDMAN**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2003.

Decided Feb. 10, 2004.

Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Kerry Freedman, appellee, pro se.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY Judge LEADBETTER.

The Department of Transportation, Bureau of Driver Licensing (Department), appeals from the order of the Court of Common Pleas of Lehigh County (common pleas) that sustained the appeal of Kerry

Freedman from the requirement that he install ignition interlock devices on all vehicles that he owns before his operating privilege could be restored. The Department imposed the ignition interlock requirement pursuant to what is commonly referred to as the Ignition Interlock Device Act (Act) 42 Pa.C.S. §§ 7001–7003.[1] Over the objection of the Department that Freedman's appeal was untimely, common pleas allowed the appeal *nunc pro tunc* and held that the Department lacked authority to require installation of an ignition interlock device absent court order and sustained Freedman's appeal. For the reasons set forth below, we vacate and remand with instructions that common pleas quash the appeal.

Freedman pled guilty to driving under the influence (DUI) of alcohol in violation of 75 Pa.C.S. § 3731. Since this was Freedman's second DUI conviction, the sentencing court imposed a fine and a term of imprisonment. The sentencing order did not include the requirement that Freedman install an ignition interlock device as provided for in Section 7002(b).[2] Neither the Commonwealth nor Freedman appealed the judgment of sentence. Thereafter, in April of 2002, the Department notified Freedman that his operating privilege was suspended for one year and

1. The legislature recently amended the Act with the passage of the Act of September 30, 2003, P.L. —— (Act 24). In addition, the Act was held unconstitutional in part by our Supreme Court in *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003).

2. Section 7002(b), which was one of the provisions severed from the Act by the Supreme Court in *Mockaitis*, required trial courts to, among other things, order the installation of an ignition interlock device on each vehicle owned by a licensee convicted of a second or subsequent violation of 75 Pa.C.S. § 3731. We note that the legislature's recent amendment of the Act with Act 24 gives the Depart-

ment independent authority to require an ignition interlock device absent a court order. Section 3 of Act 24 amended, among other sections, Section 7002(b) of the Act by adding the following provision:

If a second or subsequent violation of 75 Pa.C.S. § 3731 occurs after September 30, 2003, a court's failure to enter an order in compliance with this subsection shall not prevent the department from requiring, and the department shall require, the person to install an approved ignition interlock device in accordance with this chapter.

This provision is not at issue in the present appeal.

that prior to the restoration of his operating privilege he would need to have an ignition interlock device installed on his vehicles. Freedman did not take an appeal from this suspension notice within the statutory period.

In January of 2003, the Department sent Freedman a "Restoration Requirements Letter" outlining the steps he would need to take in order to restore his operating privilege. Included therein was the requirement that he equip his vehicles with an ignition interlock device. Shortly thereafter, on February 6, 2003, Freedman filed an appeal challenging the Department's authority to require that he install ignition interlock devices on his vehicles prior to the restoration of his operating privilege. Common pleas sustained Freedman's appeal concluding that it could properly consider Freedman's appeal *nunc pro tunc* and that pursuant to this court's decision in *Schneider v. Department of Transportation, Bureau of Driver Licensing*, 790 A.2d 363 (Pa.Cmwlth.2002), *allocatur granted*, —— Pa. ——, 842 A.2d 408 (2004), the Department lacked the authority to require the installation of an ignition interlock device absent a court order. The present appeal followed.

Prior to *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003), this court held in a series of cases, beginning with *Schneider*, that the Department had no independent authority under the Act to require the installation of an ignition interlock device prior to restoring a licensee's driving privilege. *See, e.g., McGrory v. Dep't of Transp., Bureau of Driver Licensing*, 828 A.2d 506 (Pa.Cmwlth.2003); *Schneider.* Accordingly, in those cases, we affirmed common pleas' order sustaining the licensee's appeal from the Department's imposition of such a requirement absent a court order. *See id.*

In *Mockaitis*, our Supreme Court addressed the constitutionality of those sections of the Act that required sentencing courts both to order installation of ignition interlock systems on motor vehicles owned by licensees convicted of repeated violations of driving under the influence (DUI) of alcohol in violation of 75 Pa.C.S. § 3731 and to certify to the Department that such systems had been installed. *See* 42 Pa. C.S. § 7002(b). After review, the Court ultimately concluded that the Act's delegation of executive responsibility to the courts of common pleas in connection with the restoration of the operating privileges of serial DUI offenders was unconstitutional on the grounds that such delegation violated the separation of powers doctrine. In doing so, the Court opined in pertinent part:

> [D]elegation to the judiciary of the executive functions necessary to effectuate issuance of an ignition interlock restricted license—*i.e.*, ordering installation of the interlock system(s) as a condition to applying to the Department for a restricted license, verifying compliance, and apprising the Department of the court's determinations—impermissibly violates the separation of powers doctrine....
>
> ....
>
> The General Assembly cannot constitutionally impose upon the judicial branch powers and obligations exclusively reserved to the legislative or executive branch; nor can it in essence deputize judicial employees to perform duties more properly reserved to another of the co-equal branches of government. But, in terms of the obligation it imposes upon the trial courts to regulate the restoration of driving privileges in this instance, that is exactly what [the Act] entails.... *This scheme essentially forces court employees to serve the func-*

*tion of the Department of Transportation in discharging its executive responsibility of regulating whether and when repeat DUI offenders are entitled to conditional restoration of their operating privileges.*

575 Pa. at 24–26, 834 A.2d at 499, 500 (emphasis added). Consequently, the Court severed three provisions of the Act, specifically, subsection 7002(b), subsection 7003(1), and the last clause of subsection 7003(5),[3] which refers to subsection 7003(1).

Importantly, and relevant to the instant appeal, the Court emphasized that notwithstanding its severance of those three subsections of the Act, the Act's ignition interlock requirement was still viable and enforceable, and permitted effectuation of the legislative requirement that serial DUI offenders can have their driving privileges restored only after securing an ignition interlock restricted license, which permits a licensee to operate a motor vehicle only if it is equipped with an approved ignition interlock system. *Id.* at 9–10, 834 A.2d at 490. Specifically, the Court opined:

> Our holding that [the Act's] delegation of executive responsibilities to the trial court is unconstitutional does not ineluctably require striking the Act in its entirety . . . . . . .
>
>     . . . .
>
> Here, severing those portions of [the Act] which effectuate the delegation to the sentencing court of the license restoration-related executive responsibilities of ordering installation of the devices and certifying that they have been installed does not render the remainder of the statute incapable of execution in accordance with legislative intent. Our separation of powers holding can be ef-

fected by severing three provisions of [the Act]: subsection 7002(b), which delegates to the court the inter-related tasks of ordering a serial DUI offender to install the devices, apprising the Department of that order, verifying compliance, and certifying compliance to the Department; subsection 7003(1), which provides that, when a recidivist DUI offender seeks restoration of driving privileges, "the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system;" and the last clause of subsection 7003(5), which refers back to subsection 7003(1) (*i.e.,* "after otherwise being eligible for restoration under paragraph (1)"). With these provisions severed, the legislation still requires recidivist DUI offenders seeking restoration of driving privileges to apply to the Department for an ignition interlock restricted license. 42 Pa.C.S. § 7003(2). The Act also precludes the offender in possession of such a restricted license from operating any motor vehicle on a highway in the Commonwealth unless that vehicle is equipped with an approved ignition interlock system. *Id.* § 7003(3). The Act thus still prevents recidivist DUI offenders from lawfully operating motor vehicles on the highways in Pennsylvania unless they have an approved limited license and are driving a properly-equipped vehicle.

*Id.* at 28–30, 834 A.2d at 502.

■ The Department makes two arguments on appeal, that common pleas erred when it allowed Freedman to appeal *nunc pro tunc* and that it has an independent mandate under Section 7003 to impose ignition interlock device requirements upon repeat DUI offenders.[4] We do not reach

---

**3.** We note that the Act 24 amendments deleted subsection 7003(5) in its entirety.

**4.** This second issue is before our Supreme Court in *Schneider,* but that court has not yet

the second argument because we find the first to be dispositive.

■ The proper procedure to challenge the Department's imposition of the ignition interlock device requirement is to file an appeal from the notice of suspension. *Schneider* at 366 n. 7; *Turner v. Dep't of Transp., Bureau of Driver Licensing,* 805 A.2d 671, 674 (Pa.Cmwlth.2002); *Hess v. Dep't of Transp., Bureau of Driver Licensing,* 821 A.2d 663, 665 (Pa.Cmwlth. 2003). It is well settled that a licensee must file his appeal within 30 days from the date the Department mails such notice. 75 Pa.C.S. § 1550; 42 Pa.C.S. §§ 5571(b), 5572; *Dep't of Transp., Bureau of Driver Licensing v. Stollsteimer,* 156 Pa.Cmwlth. 64, 626 A.2d 1255, 1256 n. 3 (1993). The Department correctly notes that an untimely appeal deprives common pleas of subject matter jurisdiction, *Hudson v. Dep't of Transp., Bureau of Driver Licensing,* 830 A.2d 594, 598 (Pa.Cmwlth.2003), an issue which may be raised at any time. *Id.* at 598 n. 7. Nonetheless, in *Watterson v. Dep't of Transp., Bureau of Driver Licensing,* 816 A.2d 1225 (Pa.Cmwlth.2003), we held that a *nunc pro tunc* appeal was appropriate. We reasoned that only the court had the lawful power to impose the interlock restriction, and thus the Department's refusal to restore a license absent compliance with the interlock requirement was so outside its lawful authority as to be void *ab initio.* 816 A.2d at 1227. However, *Mockaitis* makes clear that the restoration of driving privileges, *i.e.,* "whether and when repeat DUI offenders are entitled to conditional restoration of their op-

erating privileges,"[5] is not a function of the court, but rather the unique authority and responsibility of the Department. Since the rationale in *Watterson* for permitting an untimely appeal has been rejected by our Supreme Court, and there is no contention by Freedman that other circumstances warrant allowance of a *nunc pro tunc* appeal, we agree that Freedman failed to timely challenge the Department's imposition of the ignition interlock requirement.

Accordingly, we vacate common pleas' order and remand with instructions to quash Freedman's statutory appeal.[6]

### ORDER

AND NOW, this 10th day of February, 2004, the order of the Court of Common Pleas of Lehigh County in the above captioned matter is hereby VACATED and REMANDED with instructions to quash Freedman's statutory appeal as untimely.

Jurisdiction relinquished.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the decision of the majority to order that the appeal filed by Kerry Freedman be dismissed as untimely rather than heard on the merits. This Court in *Watterson v. Department of Transportation, Bureau of Driver Licensing,* 816 A.2d 1225 (Pa.Cmwlth. 2003), under factual circumstances very similar to those present here, affirmed a trial court's refusal to quash an appeal as untimely filed. In *Watterson* the driver

---

decided whether the restoration orders at issue in these cases exceeded in some respects the limits of the Department's authority under the Act prior to the September, 2003 amendments.

5. *Mockaitis,* 575 Pa. at 26, 834 A.2d at 500.

6. For reasons that are unclear, the Department raises a third contention regarding whether it improperly applied the Act retroactively. No such argument has ever been raised by Freedman, so the issue would not properly be before us, even were we to reach the merits of Freedman's statutory appeal.

did not appeal from the April 2001 notice of suspension that he received from the Department of Transportation with an accompanying notice that an ignition interlock device must be installed on all vehicles that he owned before restoration of his operating privileges. In February 2002 the driver appealed from the Department's refusal to restore his license until he had complied with the ignition interlock requirement. The Department moved to quash the appeal, and the trial court denied the Department's motion.

This Court affirmed the trial court's *nunc pro tunc* consideration of the merits in *Watterson*. In doing so, the Court found that the trial court was correct in relying on *Schneider v. Department of Transportation, Bureau of Driver Licensing*, 790 A.2d 363 (Pa.Cmwlth.2002), which held that only the trial court had the authority to impose the ignition interlock requirement and that the Department had no independent authority to do so absent a court order. Because the requirement imposed upon the driver by the Department was void *ab initio*, the Court held that equitable relief was mandated under the extraordinary circumstances of the case and, therefore, that the trial court could properly consider the merits of the appeal *nunc pro tunc*. This Court followed the holding of *Watterson* on the issue of *nunc pro tunc* appeals from notices of intent to impose an interlock requirement in countless later cases, including *Hines v. Department of Transportation, Bureau of Driver Licensing*, 820 A.2d 922 (Pa.Cmwlth.2003), and *Conroy v. Department of Transportation, Bureau of Driver Licensing*, 825 A.2d 799 (Pa.Cmwlth.2003). Thus the Court's position on this question has been consistent, and it has provided reliable guidance to courts of common pleas throughout the Commonwealth.

In *Commonwealth v. Tilghman*, 543 Pa. 578, 588 n9, 673 A.2d 898, 903 n9 (1996), the Supreme Court stated: "The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." This Court stated in *State Farm Mut. Auto. Ins. Co. v. Department of Insurance*, 720 A.2d 1071, 1073 (Pa.Cmwlth.1998), *aff'd*, 560 Pa. 595, 747 A.2d 355 (2000): "Stare decisis binds us to follow decisions of our own court until they are either overruled or compelling reasons persuade us otherwise."

Now, however, the majority overrules the *Watterson* line of cases on the basis of the Supreme Court's recent holding in *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003), although *Mockaitis* did not expressly address the issue of *nunc pro tunc* appeals in ignition interlock cases. In *Mockaitis* the Supreme Court held that certain provisions of the Act commonly known as the Ignition Interlock Device Act, 42 Pa.C.S. §§ 7001–7003, constituted an unconstitutional delegation of executive department functions to the trial court, and it severed and struck those provisions, *i.e.*, subsections 7002(b), 7003(1) and 7003(5). The court also held that remaining provisions authorized the Department to impose the restriction on repeat DUI offenders when they seek to restore their operating privileges after expiration of the mandatory suspensions.

Further, as the majority notes, a ruling on the petition for allowance of appeal from this Court's order in *Schneider*, the first of this Court's ignition interlock decisions, has been reserved by the Supreme Court pending disposition in *Mockaitis* and another case. In its brief the Department lists eight other decisions of this Court in ignition interlock cases for which

petitions for allowance of appeal are pending in the Supreme Court. No such ruling has yet been rendered by the Supreme Court, and neither this Court nor any other may forecast what rationale the Supreme Court might later follow in a given set of circumstances. Therefore, in recognition of the long-established policy promoted by judicial adherence to the doctrine of stare decisis and for the sake of uniformity, predictability and consistency, this Court should follow and be bound by its own precedents unless and until they are overruled by the Supreme Court or other compelling circumstances prevail to persuade this Court otherwise. In short, no reason exists for the Court to overrule *Watterson* and those cases that followed it.

A separate reason exists for recognizing the jurisdiction of the trial court to hear the appeal of Freedman. In *Hess v. Department of Transportation, Bureau of Driver Licensing,* 821 A.2d 663 (Pa. Cmwlth.2003), the Department sent to the licensee a letter that on the first page notified him of the suspension of his driver's license, following his second conviction for driving under the influence of alcohol, and informed him of the ignition interlock requirement and the penalty for failure to comply. The letter, mailed in February 2001, then stated: " 'You will receive more information regarding this requirement approximately 30 days before your eligibility date.' " *Id.* at 665. The final section indicated that the licensee had the right to appeal " 'this action' " within thirty days, and it reminded the licensee that " 'this is an OFFICIAL NOTICE OF SUSPENSION.' " *Id.* The Court in *Hess* concluded that because the notice promised more information about the ignition interlock requirement, it suggested that the suspension and the ignition interlock requirement were different actions; therefore, it was not clear whether the notice of the right to

appeal "this action" within thirty days applied to the ignition interlock system requirement. Noting this Court's prior decision in *Schneider,* the Court accordingly concluded that there had been a breakdown of the administrative process justifying the *nunc pro tunc* appeal, which Hess filed in April 2002.

The notice of suspension received by Freedman in the present case, dated April 9, 2002, is virtually identical to the notice sent by the Department in *Hess.* The first sentence of the first paragraph states: "This is an official notice of the Suspension of your Driving Privilege as authorized by Section 1532B of the Pennsylvania Vehicle Code." R.R. 20a. The ignition interlock requirement is listed on the second page among other requirements, such as paying the restoration fee, that the licensee must fulfill before restoration, and that paragraph promises more information in the future. The appeal section at the end refers to "this action," and the letter concludes: "Remember, this is an OFFICIAL NOTICE OF SUSPENSION." R.R. 22a. Thus the holding in *Hess* provides a further basis for this Court to affirm the trial court's decision to hear Freedman's appeal *nunc pro tunc.* I therefore dissent from the majority's failure to apply and/or to follow recently decided cases from this Court.

Judge PELLEGRINI and Judge FRIEDMAN join in this dissenting opinion.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that Kerry Freedman (Freedman) is not entitled to a *nunc pro tunc* appeal from a decision by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) to

require Freedman to install ignition interlock devices on all vehicles owned by him before DOT would restore his operating privileges. For the following reasons, I cannot agree.

## I. Nunc Pro Tunc

First, I join Judge Smith–Ribner in recognizing the need to consider this court's holding in *Hess v. Department of Transportation, Bureau of Driver Licensing*, 821 A.2d 663 (Pa.Cmwlth.2003).

It is true that the trial court determined the *nunc pro tunc* appeal issue based on *Watterson v. Department of Transportation, Bureau of Driver Licensing*, 816 A.2d 1225 (Pa.Cmwlth.2003), and that Freedman's brief does not ask this court to consider *Hess* in deciding this appeal by DOT. However, these facts do not prevent us from considering whether Freedman is entitled to a *nunc pro tunc* appeal based on *Hess*. Indeed, our supreme court has stated that "a correct decision will be sustained if it can be sustained for any reason whatsoever; . . . we will not reverse [a correct decision] . . . even though the reason given by the Court below . . . was erroneous." *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A.2d 899, 901–02 (1955). Despite this admonition, the majority has reversed the trial court's correct decision without considering the reason set forth in *Hess* for sustaining that decision.[1]

In *Hess*, this court held that a *nunc pro tunc* appeal of the ignition interlock requirement is justified where DOT's notice of suspension does not state clearly that the licensee has the right to appeal the ignition interlock requirement.[2] DOT's notice of suspension to Freedman is no different from the notice to the licensee in *Hess*. The notice indicates that Freedman had the right to appeal the suspension but that Freedman would receive more information about the ignition interlock requirement. Thus, I would conclude that, as in *Hess*, Freedman is entitled to a *nunc pro tunc* appeal.

I point out that, in *Schneider v. Department of Transportation, Bureau of Driver Licensing*, 790 A.2d 363 (Pa.Cmwlth.2002), *allocatur granted*, —— Pa. ——, 842 A.2d 408 (2004), DOT argued before this court that its notice of suspension was *not* a final order with respect to the ignition interlock requirement. Thus, if a licensee had contacted DOT to inquire about his or her appeal rights after receiving a notice of suspension with an ignition interlock requirement, DOT would have informed the licensee that he or she could *not* appeal the ignition interlock requirement. In other words, DOT's notice was so ambiguous with respect to a licensee's appeal rights, even DOT did not understand it. Nevertheless, the majority will not excuse

---

1. I note that the majority cites *Hess* for the proposition that, to challenge the ignition interlock requirement, a licensee must file an appeal from a notice of suspension. (Majority op. at 498.) I also note that the majority never suggests that the *nunc pro tunc* analysis in *Hess* was incorrect when it was filed or that it has been overruled since then.

2. In *Hess*, the licensee, like Freedman, did not file an appeal from DOT's notice of suspension. However, upon examination of DOT's notice of suspension, this court observed that

DOT (1) promises more information about the ignition interlock requirement, (2) states that the licensee has the right to appeal "this action" and (3) specifically states that "this is an Official Notice of Suspension." *Hess*. This court stated that such notice was unclear as to whether the licensee's right to appeal the suspension included the right to appeal the ignition interlock requirement. *Id*. As a result, this court concluded that there was a breakdown in the administrative process that justified a *nunc pro tunc* appeal. *Id*.

Freedman for failing to understand DOT's notice.

The situation created for licensees by the notice of suspension here is similar to that created by the notice of suspension in *Department of Transportation, Bureau of Motor Vehicles v. Andrews*, 143 Pa. Cmwlth. 601, 600 A.2d 622 (1991). In *Andrews*, when the licensees' insurance coverage lapsed, DOT sent them a notice stating that, to prevent the suspension of their registration, they were required to provide proof of financial responsibility. The licensees submitted proof, but DOT notified the licensees that their proof was insufficient. Unfortunately, the licensees received DOT's second notice after the suspension appeal period had expired. This court held that DOT's original notice was not a final order because it conditioned the suspension upon the licensees' failure to submit acceptable proof to DOT.

Here, DOT's original notice of suspension in April 2002 told Freedman that he would receive more information about the ignition interlock requirement thirty days before his eligibility date. The nature of the additional information was left to Freedman's imagination. Because Freedman did not know any details about the requirement, he could not know all that he might wish to challenge in an appeal. From Freedman's point of view, his desire to appeal might depend upon the new information. However, as in *Andrews*, by the time Freedman received the second notice from DOT in January 2003, the appeal period had expired.

## II. Void *Ab Initio*

Second, like Judge Smith–Ribner, I do not believe that our supreme court's decision in *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003), has the impact stated by the majority on this court's holding in *Watterson* (holding that, inasmuch as DOT lacks statutory authority to impose the ignition interlock requirement, DOT's imposition of the requirement is void *ab initio* ).

The majority states that our supreme court rejected the *Watterson* rationale in *Mockaitis*. I disagree. Our supreme court *never* stated in *Mockaitis* that DOT has the authority to require the installation of ignition interlock devices in all vehicles owned by a licensee before DOT restores the licensee's operating privileges.[3] Thus, any attempt by DOT to require that a licensee install ignition interlock devices on his or her vehicles before issuing a restricted license is outside DOT's statutory authority.

Our supreme court's discussion of the equal protection claim in *Mockaitis* is proof that the court never intended to suggest that DOT can require the installation of ignition interlock devices in all vehicles owned by a licensee before issuing a restricted license. The trial court in *Mockaitis* concluded that requiring the installation of ignition interlock devices on *all* vehicles *owned* by the licensee prior to DOT's issuance of a restricted license violated the equal protection rights of licensees who *lease* vehicles or own *multiple* vehicles.[4] *Id.* Our supreme court stated further that there was no need to address

3. Our supreme court stated only that: (1) "recidivist DUI offenders *seeking restoration* of driving privileges [must] apply to [DOT] for an ignition interlock restricted license"; (2) such a license "precludes the offender ... *from operating* any motor vehicle on a highway in the Commonwealth *unless* that vehicle is equipped with an approved ignition inter-

lock system"; and (3) the enforcement of the restriction is pursuant to "the usual prosaic means of enforcing licensing restrictions in this Commonwealth." *Id.* at 29–30, 834 A.2d at 502–03 (emphasis added).

4. The trial court concluded that the requirement discriminates against non-owners of motor vehicles because it renders them incap-

this question because the statutory provisions requiring the installation of ignition interlock devices in *all* vehicles *owned* by a licensee have been severed from the law as violative of the separation of powers doctrine.[5] *Id.* Thus, under *Mockaitis,* DOT *still* does *not* have authority to require the installation of ignition interlock devices on *all* vehicles *owned* by a licensee prior to DOT's issuance of a restricted license.

In this case, DOT imposed such a requirement upon Freedman, and Freedman challenges that requirement in his appeal. Because DOT lacked authority to impose the requirement, it was void *ab initio* pursuant to *Watterson.* Thus, I would conclude that Freedman is entitled to a *nunc pro tunc* appeal and affirm.[6]

Judge SMITH–RIBNER joins in this dissent.

---

able of securing a restricted license. *See Mockaitis.* In addition, the trial court apparently concluded that there was no rational basis for requiring *all* vehicles owned by a licensee to have an ignition interlock device when one specially-equipped vehicle would suffice.

5. The court stated that "the bases for these challenges disappear" with the removal of the constitutionally infirm provisions from the statute. *Id.* at ——, 834 A.2d at 503.

6. Given the fact that the legislature now has given DOT independent authority with respect to violations occurring after September 30, 2003, to require the installation of ignition interlock devices, I see no reason to retroactively alter this court's previous holdings, upon which trial courts and licensees have relied in rendering decisions and filing appeals.