IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Francis Black,             :
              Appellant    :
                             :
          v.                :
                             :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :   No. 251 C.D. 2018
Bureau of Driver Licensing      :   Submitted: December 13, 2018

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: January 4, 2019

Richard Francis Black (Licensee) appeals from the January 31, 2018 order of the Court of Common Pleas of Potter County (trial court) denying his statutory appeal from a 12-month driver's license suspension imposed by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1] Upon review, we affirm.

---

[1] 75 Pa. C.S. § 3802.

At approximately 7:45 p.m. on February 25, 2017, Pennsylvania State Police Trooper Eric Neiswonger observed Licensee's vehicle run a stop sign. Notes of Testimony, January 26, 2018 (N.T.) at 4. Trooper Neiswonger activated his emergency lights and conducted a traffic stop. N.T. at 4. During the traffic stop, Trooper Neiswonger noticed that Licensee was wearing his seatbelt improperly, his eyes were bloodshot, and his vehicle smelled of alcohol. N.T. at 4-5. When asked to produce his license, registration, and insurance information, Licensee first twice produced a Veterans Affairs identification card before finally providing the proper documentation. N.T. at 5. Licensee explained he was coming from a ski area in New York State and that he had consumed one beer with dinner before driving. N.T. at 5-6.

When asked by Trooper Neiswonger to alight from his vehicle, Licensee exhibited difficulty with balance and stumbled a bit. N.T. at 7. Trooper Neiswonger then administered a preliminary breath test (PBT) that registered Licensee's blood alcohol percentage at 0.11%. N.T. at 12. Thereafter, Trooper Neiswonger conducted a number of field sobriety tests, all of which Licensee failed to perform satisfactorily.[2] N.T. at 7-12. After the field sobriety tests, Trooper Neiswonger administered another PBT that registered Licensee's blood alcohol content at 0.10%. N.T. at 12-13. Based on the results of the testing and his observations, Trooper Neiswonger placed Licensee under arrest for suspicion of DUI. N.T. at 13.

Trooper Neiswonger then transported Licensee to a hospital approximately 30 minutes away from the scene of the arrest. N.T. at 13. Once there,

---

[2] Trooper Neiswonger had Licensee perform the horizontal and vertical gaze nystagmus tests, the walk-and-turn test, and attempt the one-leg stand test. N.T. at 7-9.

Trooper Neiswonger read Licensee the entire DOT DL-26B Request for Chemical Testing form (DL-26B) verbatim and requested that Licensee consent to a blood test.[3] N.T. at 13. Licensee refused to sign the DL-26B form because he could not read the form himself for want of his reading glasses. N.T. at 13. Police then read the form out loud again word for word, and Licensee, once again citing that he could not read the form for himself, refused to sign. N.T. at 13. Ultimately, Trooper Neiswonger determined Licensee had refused chemical testing by failing to answer yes or no and signed the DL-26B form on the line that indicated Licensee had refused to sign the DL-26B form after being appraised of the appropriate warnings. N.T. at 13-14.

On March 8, 2017, DOT mailed Licensee a letter notifying him that, as a result of his refusal to submit to chemical testing on February 25, 2017, his license would be suspended pursuant to the Implied Consent Law for 12 months, effective

---

[3] The DL-26B provides the following statements and warnings to be read to a motorist under arrest for DUI:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B, License Suspension Hearing Exhibit C-1.

April 12, 2017. *See* License Suspension Notice, License Suspension Hearing Exhibit C-1. Licensee appealed and the trial court conducted a hearing on Licensee's license suspension appeal on January 26, 2018. *See* N.T. 1/26/2018. On January 31, 2018, the trial court entered its order denying Licensee's appeal. *See* Trial Court Order dated January 31, 2018. On February 8, 2018, Licensee filed a Motion for Post-Trial Relief/Reconsideration, which the trial court denied by order dated February 8, 2018. *See* Motion for Post-Trial Relief/Reconsideration; Trial Court Order dated February 8, 2018. On February 20, 2018, Licensee filed a timely notice of appeal to this Court.[4]

Licensee raises three claims in this appeal. First, Licensee claims that the Implied Consent warnings the police provided per the DL-26B form were legally insufficient because they did not inform him that he may be subject to increased criminal penalties for refusing to submit to chemical testing. *See* Licensee's Brief at 5 & 12-17. Second, Licensee argues the trial court erred when it allowed DOT's counsel to refresh Trooper Neiswonger's recollection with a copy of his police report. *Id.* at 5 & 18-25. Finally, Licensee claims he was prevented from making a clear and knowing decision whether to submit to chemical testing because he was confused about whether he could make a telephone call. *Id.* at 5 & 26.

Initially, we note:

> To sustain a license suspension under Section 1547(b) of the Vehicle Code, [75 Pa. C.S. § 1547(b),] DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while

---

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

4

under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, Licensee does not challenge that he was driving the vehicle, that the police requested he submit to chemical testing, or that he refused to sign the DL-26B form as requested. Instead, in his first claim, Licensee challenges the legal sufficiency of the DL-26B warnings, and, in his third claim, Licensee alleges he was incapable of making a knowing and conscious decision whether to submit to the requested testing because he was confused about whether he could make a telephone call.

In his first claim, Licensee argues that DOT cannot suspend his license because the form Trooper Neiswonger read to him, the DL-26B, was legally insufficient in that it did not advise that refusal of blood testing might subject him to increased criminal penalties. *See* Licensee's Brief at 12-17. Essentially, Licensee argues that, in the absence of action from the General Assembly, the DL-26B form did not contain the then-existing statutorily mandated warnings and DOT did not have the right to amend the DL-26 form to remove reference to possible criminal penalties or enhancements for refusal to submit to chemical testing pursuant to the Implied Consent Law. *Id.* We do not agree.

Pennsylvania's Implied Consent Law authorizes driver's license suspensions for drivers arrested for DUI but who refuse requested chemical testing

and requires police to inform motorists of the consequences of refusal. *See* 75 Pa. C.S. § 1547(b)(1) & (2). At the time of Licensee's arrest, the text of the Implied Consent Law directed police to issue certain warnings to individuals arrested for DUI in conjunction with a request to conduct chemical testing as follows:

> (2) It shall be the duty of the police officer to inform the person that:
>
>> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>>
>> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

*Former* 75 Pa. C.S. § 1547(b)(2). The first of these warnings explained the civil penalties drivers faced for refusing chemical testing. *Former* 75 Pa. C.S. § 1547(b)(2)(i). The second warning explained possible increased criminal penalties an individual who refused chemical testing would face following conviction for a Section 3802(a)(1) DUI offense.[5] *Former* 75 Pa. C.S. § 1547(b)(2)(ii). The

---

[5] Vehicle Code Section 3802(a)(1) defines general impairment DUI and is the only section that permits conviction of a defendant for an alcohol-based DUI charge in the absence of a known blood or breath alcohol concentration, the determination of which requires chemical testing. 75 Pa. C.S. § 3802(a)(1). Normally, Section 3802(a)(1) convictions receive sentences pursuant to the possible maximum penalties outlined in Section 3804(a), the least severe classification of possible penalties for DUI convictions in Pennsylvania. *See* 75 Pa. C.S. § 3804(a). However, pursuant to former Section 1547(b)(2)(ii), defendants arrested for alcohol-based DUIs who refused chemical testing, and who were convicted only of a Section 3802(a)(1) general impairment DUI as a result, would face punishment under Section 3804(c) instead of Section 3804(a). Section 3804(c) details the permissible criminal penalties for DUI convictions under Section 3802(c) (pertaining to the highest level of intoxication) and 3802(d) (pertaining to controlled substance intoxication), which

communication of both the criminal and civil warnings regarding refusals was mandatory under former Section 1547. *See Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264 (Pa. 2006) (noting Section 1547(b) commanded police to warn motorists of the criminal enhancements attendant to refusal of chemical testing in DUI arrests).

Pursuant to the Implied Consent Law, DOT created the DL-26 form, which warned motorists arrested for DUI about the enhanced civil and criminal penalties for chemical testing refusals thusly:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000, up to a maximum of five years in jail and a maximum fine of $10,000.

DOT Form DL-26. Police used this DL-26 form to comply with the requirements of Section 1547 during DUI arrests from early 2004 through mid-2016.

On June 23, 2016, the Supreme Court of the United States rendered its decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). In *Birchfield*, the

---

are significantly more severe than the penalties outlined in Section 3804(a). *See* 75 Pa. C.S. § 3804(c).

7

Supreme Court determined that criminal penalties imposed by the states upon individuals who refuse to submit to a warrantless blood draw violated the Fourth Amendment's protection against unreasonable search and seizure. *Id.* at 2185-86. Thereafter, the Superior Court of Pennsylvania held "that, pursuant to *Birchfield*, in the absence of a warrant or exigent circumstances justifying a search, a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.[]C.S.[] §§ 3803-3804." *Commonwealth v. Giron*, 155 A.3d 635, 640 (Pa. Super. 2017); *see also Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016). On the civil side,[6] this Court determined that, although it may have some impact on criminal DUI proceedings, *Birchfield* has no bearing on civil license suspensions under the Implied Consent Law.[7] *Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017).

In response to the *Birchfield* decision, and after conferring with the Pennsylvania District Attorneys Association, DOT revised the DL-26 form to remove reference to the enhanced criminal repercussions of refusal.[8] DOT's revised form – designated as the DL-26B form – eliminated the Section 1547(b)(2)(ii) warning that refusal to submit to chemical testing would result in possible enhanced

[6] "[A] license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident." *Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 20 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017).

[7] In fact, the Supreme Court of the United States expressly stated that it did not intend its decision in *Birchfield* to cast doubt on the constitutionality of implied consent laws. *See Birchfield*, 136 S. Ct. at 2185.

[8] Prior to *Birchfield*, DOT's DL-26 form contained accurate 1547(b) warnings. *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009) (*en banc*).

8

criminal penalties. *See* DOT DL-26B Form. The DL-26B form preserved, however, the Section 1547(b)(2)(i) warning that refusal to submit to requested chemical testing would result in at least a 12-month driver's license suspension. *Id.*

On July 20, 2017, the General Assembly amended the Implied Consent Law to eliminate the Section 1547(b)(2)(ii) enhanced criminal penalties for refusing to submit to the warrantless testing of one's blood.[9] *See* Act of July 20, 2017, P.L. 333, § 3; *see also* 75 Pa. C.S. § 1547.

Here, Licensee first contends that, because the language of the Implied Consent Law in effect at the time of his arrest ostensibly required both a civil and criminal warning, the DL-26B form that police read to Licensee, which omitted the criminal warning, failed to comply with the requirements of former Section 1547, and that such failure requires a reversal of his 12-month license suspension for refusal to submit to the blood test requested by police upon his arrest for alcohol-based DUI. *See* Licensee's Brief 12-17. Effectively, Licensee argues that, because the General Assembly had not yet amended former Section 1547 at the time of his arrest, the DL-26B form police read to Licensee did not comply with statutory

---

[9] The current version of Section 1547 reads, in relevant part:

> (2) It shall be the duty of the police officer to inform the person that:
>
> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and
> >
> > (ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. § 1547(b)(2). Under this amended statute, the increased penalties for refusal to submit to chemical testing apply only to breath testing, the legality of which was unaffected by *Birchfield*. *See Giron*, 155 A.3d at 640 n.13.

requirements. Further, Licensee claims DOT lacked the authority to amend the DL-26 form. We do not agree.

Following his arrest, police read Licensee the warnings as provided in the revised DL-26B form. The revised DL-26B form includes the civil warning from Section 1547(b)(2)(i), but not the criminal warning previously mandated by former Section 1547(b)(2)(ii). Pursuant to *Birchfield*, and the Superior Court of Pennsylvania's subsequent holdings thereon, the DL-26B form now provides an accurate warning of the civil consequences Pennsylvania motorists face for refusing to submit to requested chemical testing when arrested for DUI.

Licensee essentially forwards the argument that this Court recently reviewed and rejected in *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018). In *Garlick*, the appellant argued that, at the time police read him the DL-26B warning, the form did not include warnings about both criminal and civil consequences for refusal and, therefore, failed to conform to the text of Section 1547(b)(2)(ii), which the General Assembly had not yet amended. *Garlick*, 176 A.3d at 1031-32. As the Court explained, "Licensee's argument [was], in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), DOT and the police had to continue to apply Section 1547(b)(2)(ii)." *Id.* at 1036. In discussing appellant's claim, this Court noted that,

> [a]lthough, at the time [police] requested that [l]icensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under Section 3804(c) for refusing a test of his blood, [l]icensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of [l]icensee's refusing the blood test.

10

*Id.* In rejecting the claim, the Court further explained:

> Licensee seems to suggest [] that, in order for his license suspension to be valid, [the police] had to violate [l]icensee's Fourth Amendment rights by warning [l]icensee about the no-longer enforceable enhanced criminal penalties because Section 1547(b)(2)(ii) still required that warning. This constitutional violation, according to [l]icensee's interpretation of these cases, would have no impact on his license suspension and, therefore, there was no reason for [the court of] common pleas to consider *Birchfield* in this proceeding. To put it simply, [l]icensee's argument encourages officers to violate licensees' Fourth Amendment rights thereby jeopardizing their criminal prosecutions in order to comply with Section 1547(b)(2)(ii) even though the criminal penalty in the warning is no longer enforceable and, therefore, no longer a consequence of refusing a blood test. We cannot countenance such an argument.

*Id.* at 1037 (footnote omitted).

For the same reasons explained in *Garlick*, we find any argument that Licensee's license must be reinstated because police failed to provide a warning that his refusal would subject him to no longer constitutionally permissible enhanced criminal penalties to be unpersuasive. *See Garlick.* As in *Garlick*, the police in the instant matter read the DL-26B form that specifically and accurately warned Licensee of the civil consequences he faced by refusing to submit to blood testing and Licensee chose, for reasons of his own, to refuse to comply.[10]

---

[10] In his brief, Licensee appears to concede that this Court has decided the issue of the adequacy of DOT's DL-26B form in *Garlick* and its progeny, but merely wishes to preserve the issue because, Licensee contends, the courts of the Commonwealth have yet to fully resolve the civil and criminal implications of *Birchfield*. *See* Licensee's Brief at 15-17.

11

Further, Licensee provides no support for the argument that DOT lacked the authority to revise the DL-26 form. DOT originally created the DL-26 form to comply with the Implied Consent Law. Following *Birchfield*, DOT revised the DL-26 form to its current form – the DL-26B – to remove references to criminal consequences for failing to submit to chemical testing. *See Garlick*, 176 A.3d at 1036-37. Licensee's argument that DOT lacked authority to alter its own form to comport with the law as established by the Supreme Court of the United States is without merit.

Finally, to the extent Licensee claims that he did not refuse to submit to the requested blood test, but instead merely refused to sign the DL-26B form, this argument is also unconvincing. "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). The question of refusal by a licensee to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749. Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's questioning police regarding consequences of refusal and refusing to sign consent constituted refusal to consent to chemical testing); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption

12

and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Additionally, explicit refusal is not required to find a licensee refused to consent to chemical testing; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness to submit to testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing). Here, the trial court found that, because Licensee's "continual insistence on making a phone call and reading the DL[-]26[B] amounted to a refusal[,] . . . [Licensee] never agreed to the blood draw but continued to contest the same." Trial Court Opinion dated April 10, 2018 (Trial Court Opinion) at 4.[11] The trial court continued:

> This [c]ourt deems [Licensee's] actions and comments concerning his desire to submit to the blood draw were qualified and equivocal. Accordingly, [Licensee's] actions amounted to a refusal.

*Id.* We find no abuse of discretion in this determination.

For these reasons, Licensee's first claim fails.

In his second claim, Licensee argues the trial court erred by allowing DOT counsel to refresh Trooper Neiswonger's recollection at the hearing by showing the Trooper a copy of his police report. *See* Licensee's Brief at 18-25. This argument lacks merit.

Pennsylvania Rule of Evidence 612 provides that "[a] witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying." Pa.R.E. 612(a). Further, "[i]f a witness uses a

---

[11] The trial court based this finding on the testimony of Trooper Neiswonger, which testimony the trial court found credible. *See* Trial Court Opinion at 4.

13

writing or other item to refresh memory while testifying, an adverse party is entitled to have it produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Pa.R.E. 612(b)(1).

At the hearing on this matter, DOT counsel sought to use Trooper Neiswonger's police report to refresh his recollection of the events of February 25, 2017. *See* N.T. at 10. Counsel for Licensee objected to the extent that DOT had not previously provided the report. *Id.* Counsel for DOT provided a copy of the report to counsel and the trial court took a recess to allow Licensee and counsel an opportunity to review the report. *Id.* at 11. Because this report was not entered into evidence and was used instead only to refresh Trooper Neiswonger's recollection, this procedure met the requirements of Pennsylvania Rule of Evidence 612, and the trial court did not abuse its discretion in overruling Licensee's objection.[12]

In his third claim, Licensee alleges that his confusion about whether he could make a phone call at the hospital prevented him from making a clear and knowing decision about whether to submit to chemical testing. *See* Licensee's Brief at 26. In his brief, Licensee cites no support for or otherwise develops this argument.[13] Accordingly, it is waived. *See Berner v. Montour Twp.*, 120 A.3d 433,

---

[12] To the extent Licensee bases his claim on an alleged violation of the Criminal History Record Information Act, 18 Pa. C.S. §§ 9101-9183, Licensee did not raise such a claim before the trial court, and it is accordingly waived. Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Mun. Auth. of Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136–37 (Pa. Cmwlth. 2015) ("It is well established that in order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial *and* must raise the issue on post-trial motions.").

[13] Licensee's argument, in its entirety, consisted of the following two paragraphs:

> Ex-Trooper Neiswonger informed Dr. Black that upon the
> arrival at the hospital he could make a phone call. Dr. Black cell

14

437 n.6 (Pa. Cmwlth. 2015) (ruling that a party's failure to sufficiently develop an issue in a brief constitutes a waiver of the issue); *see also* Pa.R.A.P. 2119(a).[14]

For the above reasons, the trial court properly denied Licensee's statutory license suspension appeal. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

> phone [sic] would not work and he requested the use of a phone that was right in front of him. At that juncture Ex-Trooper Neiswonger told Dr. Black he would not be able to make a telephone call.
>
> It is submitted that the conflicting statements of the Trooper prevented Dr. Black from making a knowing and conscious decision relative to the chemical testing of his blood. As such, the decision of the trial court should be reversed.

Licensee's Brief at 26.

[14] Further, even had Licensee not waived this argument, he failed to establish that he was not capable of making a knowing or conscious refusal or that he was physically unable to take the test. *See Giannopoulos*, 82 A.3d at 1094. Licensee does not contend he was physically unable to take the blood test. To the extent Licensee claims to have been confused about whether he could make a telephone call prior to deciding whether to submit to the requested chemical testing, the DL-26B form that Trooper Neiswonger read to Licensee multiple times cleared up any question about whether Licensee had a right to a telephone call or other outside communication or advice prior to deciding whether to submit to the chemical testing by including the following express warning:

> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B form. Licensee does not contend that he did not understand the DL-26B warnings as read, and the trial court found there was no indication Licensee failed to understand the implications of the DL-26B warnings. *See* Trial Court Opinion at 3. Therefore, even if not waived, Licensee's argument that he was unable to knowingly refuse to submit to chemical testing fails.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Francis Black,                    :
                    Appellant             :
                                          :
            v.                            :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :    No. 251 C.D. 2018
Bureau of Driver Licensing                :

## O R D E R

AND NOW, this 4th day of January, 2019, the January 31, 2018 order of the Court of Common Pleas of Potter County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge