623 A.2d 925

**Robert Allen STANTON, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1993.

Decided March 22, 1993.

Gifford R. Cappellini, for appellant.

Timothy P. Wile, Asst. Counsel–In–Charge of Appellate Section, for appellee.

Before CRAIG, President Judge, PALLADINO, J., and KELTON, Senior Judge.

PALLADINO, Judge.

Robert Allen Stanton (Licensee) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) which denied his petition for leave to appeal *nunc pro tunc* from the suspension of his driving privileges imposed by the

Department of Transportation, Bureau of Driver Licensing (DOT). We affirm.

On January 14, 1992, DOT mailed a notice to Licensee which indicated that his driving privileges would be suspended for one year for his violation of Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 (implied consent). Sometime before February 10, 1992, Licensee visited the law office of Gifford R. Cappellini (law office) to inquire about the possibility of appealing this suspension. Licensee did not speak with an attorney but spoke with the office manager who agreed to provide representation.[1] Standard office procedure then called for the office manager to process the appeal. However, on February 10, the office manager was confronted with a medical emergency involving her infant daughter, which kept her away from the law office until February 17. Meanwhile, Licensee returned to the law office on February 11 and paid the firm's retainer fee. Again, Licensee did not speak with an attorney. The record does not reflect whether the appeal papers had already been prepared at that time, but during the office manager's absence, Licensee's appeal was not filed. Finally, on February 28, counsel filed Licensee's petition for leave to appeal *nunc pro tunc*, which the trial court denied.

On appeal to this Court, the only issue presented[2] is whether the trial court erred in denying Licensee's petition for leave to appeal *nunc pro tunc*.[3]

1. In Licensee's Brief at 4, Licensee alleges that on or about January 21, 1992, he met with his attorney who advised him of his appeal rights and told him that he had to properly retain attorney's services to perfect the same. Licensee then asserts that at this time, he left his papers with the office manager who began preparation of the necessary paperwork. *Id.* These facts, however, are not entirely consistent with the trial court record.

2. Licensee also raises whether the circumstances surrounding his alleged refusal to submit to chemical alcohol testing are grounds for a suspension. However, because the trial court did not reach the merits of Licensee's appeal, any consideration of the issue by this Court would be improper.

3. Our scope of review of a trial court's decision permitting or refusing to permit a *nunc pro tunc* appeal is limited to determining whether the trial court abused its discretion or committed an error of law.

Pursuant to Sections 5571(b) and 5572 of the Judicial Code, 42 Pa.C.S. §§ 5571(b) and 5572, a motorist has thirty days from the mailing date of a DOT notice of suspension in which to file an appeal with the appropriate court of common pleas. Here, the record reveals that DOT mailed its notice of suspension to Licensee on January 14, 1992; therefore, the statutory appeal period ended on February 13, 1992. The record further reveals that an appeal was not taken by Licensee until February 28, 1992.

 The law is well settled that statutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence. *Olson v. Borough of Homestead,* 66 Pa.Commonwealth Ct. 120, 443 A.2d 875 (1982). Traditionally, extensions of time for filing an appeal have been permitted only in extraordinary circumstances involving fraud or a breakdown in the court's operations. *Department of Transportation, Bureau of Driver Licensing v. Maddesi,* 138 Pa.Commonwealth Ct. 467, 588 A.2d 580 (1991). Negligence on the part of the appellant or counsel cannot justify the granting of an appeal *nunc pro tunc. Tarlo v. University of Pittsburgh,* 66 Pa.Commonwealth Ct. 149, 443 A.2d 879 (1982). However, our Supreme Court has held that an extension may be granted where the delay in filing was caused by a nonnegligent failure of the appellant's counsel. *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979).[4]

Relying on *Bass,* this Court has permitted the filing of untimely appeals in a number of cases where the delay was beyond the control of the appellant or his attorney. *See Perry v. Unemployment Compensation Board of Review,* 74

McKeown v. Department of Transportation, 144 Pa.Commonwealth Ct. 322, 601 A.2d 486 (1991).

4. In *Bass,* the appeal papers were completed several days before the expiration of the time allowed for filing. However, the secretary responsible for the filing became ill, left work and did not return until four days after the appeal period had expired. Although normal office procedure called for the staff to check the desk of an ill secretary, in this case the secretary who was ill was the one who routinely did the checking. Upon her return, she noticed the unfiled appeal, and counsel immediately sought permission to appeal *nunc pro tunc.* Our Supreme Court held that this failure to file on time was not negligent.

Pa.Commonwealth Ct. 388, 459 A.2d 1342 (1983) (delay due to mechanical failure of law clerk's car en route to post office to mail petition for review); *Tony Grande, Inc. v. Workmen's Compensation Appeal Board (Rodriguez)*, 71 Pa.Commonwealth Ct. 566, 455 A.2d 299 (1983) (delay due to sudden hospitalization of counsel). *But see Nardy v. Department of Transportation, Bureau of Driver Licensing*, 142 Pa.Commonwealth Ct. 388, 597 A.2d 288 (1991) (appeal *nunc pro tunc* not permitted where delay was due to error of counsel's secretary in placing the suspension notice in a file rather than in a mail folder with matters for immediate review). This Court has noted, however, that although *Bass* has been followed in a number of cases, these decisions were limited strictly to the unique and compelling factual circumstances presented to the Court and "they were never intended to create, as Justice Roberts warned in his dissenting opinion in *Bass*, 'a new and unnecessary layer of delay, mandating a special inquiry whenever an appeal is untimely filed.' " *Guat Gnoh Ho v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 154, 156, 525 A.2d 874, 875 (1987) (quoting *Bass*, 485 at 263, 401 A.2d at 1137 (Roberts, J., dissenting)).

■ In support of his position, Licensee relies almost exclusively on *Bass*, asserting that it is factually similar to the case at bar. Although Licensee is correct that both cases involve delays in filing attributable to the sudden absence of a staff member, the similarity between the two cases ends there. Most notably, while office procedure in *Bass* dictated that the desks of ill secretaries be checked to insure that filing deadlines were met, the law office in the present case did not follow a similar practice.[5] Rather, Licensee's appeal papers were left on the office manager's desk, and during her absence, no one assumed responsibility for their completion or filing.

5. The record does indicate, however, that regular office procedure dictated that if a client came to the office to pay a retainer, the receptionist would take the person's money and then direct him to the office manager who would review the paperwork with the client to make sure that all relevant dates were docketed.

We agree with the trial court that if an attorney entrusts the responsibilities of preparing and filing legal papers with his staff, the attorney has a continuing responsibility to see that these duties are properly and timely performed, particularly in the event the responsible staff member becomes unavailable. In the present case, counsel should have assumed responsibility for overseeing the operations of his office to insure that all required filings were made during the office manager's absence. He did not do so, nor did he attempt to ascertain whether the office manager would return in time to make a timely filing. Moreover, the payment of Licensee's retainer on February 11, after the office manager's absence, should have alerted counsel to Licensee's appeal and at least triggered him to inquire about it.

Last, Licensee's petition for leave to appeal *nunc pro tunc* must be denied because although the office manager returned on February 17, the petition was not filed until February 28, eleven days after her return. As we noted in *Department of Transportation, Bureau of Traffic Safety v. Johnson*, 131 Pa.Commonwealth Ct. 51, 569 A.2d 409 (1990), a petitioner in an appeal *nunc pro tunc* must proceed with reasonable diligence once he knows of the necessity to take action. Again, the instant case is distinguishable from *Bass* in that the *Bass* attorney immediately filed his client's appeal when the ill secretary returned and brought the matter to his attention. Although Licensee offers several explanations as to why the appeal was not filed immediately upon the office manager's return,[6] we conclude that he has failed to demonstrate that this further delay was the result of anything other than mere negligence on the part of counsel.

Based upon the foregoing, we find that the instant case is factually distinguishable from *Bass* and that Licensee's delay in filing his appeal was the result of his attorney's negligent

6. Licensee asserts that during the office manager's absence, an enormous amount of work accumulated; therefore, several days elapsed before she realized that Licensee's appeal had not been filed. Licensee further asserts that the office manager was under extreme stress as a result of her daughter's illness, and this stress impaired her ability to properly perform her duties in the law office.

conduct. We, therefore, conclude that the trial court did not err in denying Licensee's petition for leave to appeal *nunc pro tunc*. Accordingly, we affirm the trial court's order.

## ORDER

AND NOW, this March 22, 1993, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is affirmed.