William A. PAUL

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 19, 1994.

Decided Dec. 15, 1994.

Marc A. Werlinsky and Timothy P. Wile, for appellant.

Peter C. Paul, for appellee.

Before COLINS and NEWMAN, JJ., and SILVESTRI, Senior Judge.

COLINS, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Montgomery County (Common Pleas) which sustained the appeal of William A. Paul (licensee) from a one-year license suspension imposed by DOT.

By a notice dated March 15, 1993, DOT informed the licensee that his operating privilege would be suspended for one year, pursuant to Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1), as a result of his reported refusal to submit to chemical testing. The filing due date for a timely statutory appeal of this March 15, 1993 suspension notice was on or before April 14, 1993. Licensee, represented by counsel, filed a statutory appeal of the suspension on or about April 19, 1993. The record notes that the original appeal petition was time-stamped as filed by the Montgomery County prothonotary's office at 11:57 A.M. on April 19, 1993, which is also indicated in the prothonotary's docket entries.

A *de novo* hearing on licensee's statutory appeal was held on September 20, 1993 before Common Pleas, during which DOT's counsel moved to quash licensee's appeal as having been filed five days late. Licensee's counsel, while testifying under questioning from an associate, acknowledged that April 14, 1993 was the last day to have filed a timely appeal on licensee's behalf. Licensee's counsel also testified that on April 12, 1993, he mailed the licensee's appeal petition, along with his April 12, 1993 cover letter and filing fee check, to the Montgomery County prothonotary from the Flourtown post office. This fact was verified by a proof of mailing slip dated April 12, 1993, which was submitted to Common Pleas, and to which DOT's counsel stipulated.

During the hearing, it was averred by licensee's counsel that it was customary for him to mail documents for filing with the court, and that usually he receives a returned copy of the filed documents, dated two days after the mailing date. He went on to testify that when he did not receive copies of licensee's appeal in a timely fashion, he personally went to the prothonotary's office on April 19, where he located licensee's appeal papers in a pile of work still to be processed. Further testimony from licensee's counsel indicated that the prothonotary told him that licensee's appeal would be filed that day (April 19, 1993) and gave him a letter documenting the unusually heavy backlog of uncompleted work in the prothonotary's office. DOT's

counsel raised hearsay objections to both the prothonotary's alleged remarks and letter, as represented by licensee's counsel; Common Pleas allowed the former but sustained DOT's objections to the letter.

In rendering its decision, Common Pleas found that there had been a significant enough administrative breakdown in the court system to have caused the untimely filing of licensee's appeal, denied DOT's motion to quash, and ordered that licensee's appeal proceed on the merits. By order and opinion dated September 20, 1993, licensee's appeal was sustained and his operating privilege reinstated.

DOT now appeals from this order, arguing that the untimeliness of licensee's appeal was not due to administrative breakdown in the court's operations, fraud, or any non-negligent occurrence, but rather to the negligence of licensee's counsel. This alleged negligence, according to DOT, consisted of counsel's mailing the appeal petition so near to expiration of the appeal deadline, and in then allowing five days to elapse after the deadline before personally checking on the appeal's status with the prothonotary's office.

■ Our scope of review, where the trial court permits an untimely appeal to be filed *nunc pro tunc*, is limited to determining whether the trial court abused its discretion or committed an error of law. *Department of Transportation, Bureau of Driver Licensing v. Gelormino*, 160 Pa.Commonwealth Ct. 12, 636 A.2d 224 (1993). With respect to untimely appeals such as the present case, this Court has consistently reaffirmed that

statutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence. *Olson v. Borough of Homestead*, 66 Pa.Commonwealth Ct. 120, 443 A.2d 875 (1982). Traditionally, extensions of time for filing an appeal have been permitted only in extraordinary circumstances involving fraud or a breakdown in the court's operations. *Department of Transportation, Bureau of Driver Licensing v. Maddesi*, 138 Pa.Commonwealth Ct. 467, 588 A.2d 580 (1991).... However, our Supreme Court has held that an extension may be granted where the delay in filing was caused by a non-negli-

gent failure of the appellant's counsel. *Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133 (1979).

Relying on Bass, this Court has permitted the filing of untimely appeals in a number of cases where the delay was beyond the control of the appellant or his attorney. *Stanton v. Department of Transportation, Bureau of Driver Licensing*, 154 Pa.Commonwealth Ct. 350, 353, 623 A.2d 925, 926 (1993) (footnote omitted).

Applying the foregoing rationale to the present case, we note that licensee's failure to timely file his appeal, similar to the situation in *Bass* (wherein the secretary responsible for filing the petition was absent from counsel's office because of illness), was not due to counsel's negligence. The untimely filing in *Bass* was explained by an operational breakdown of the attorney's internal office procedures, which the Supreme Court found to be beyond the attorney's control and non-negligent. The present matter concerns a breakdown in a prothonotary's filing office operations, a situation more readily verifiable and substantiated by the record than in *Bass* and which unarguably cannot be attributed to licensee or his counsel. It is also relevant that in this case, licensee's counsel, as did the attorney in *Bass*, took immediate action to remedy the untimeliness once it was discovered. "As we noted in *Department of Transportation, Bureau of Traffic Safety v. Johnson*, 131 Pa.Commonwealth Ct. 51, 569 A.2d 409 (1990), a petitioner in an appeal *nunc pro tunc* must proceed with reasonable diligence once he knows of the necessity to take action." *Stanton*, 154 Pa.Commonwealth Ct. at 355, 623 A.2d at 927. This Court found that the eleven-day time lapse in *Stanton* between licensee's discovery of the untimeliness and the filing of his *nunc pro tunc* appeal was not reasonably diligent. In the present matter, however, we find the five-day period during which licensee's counsel waited to receive time-stamped return copies of the filed appeal petition before going personally to the prothonotary's office was not unreasonably long.

1. William Paul (Paul) in his brief to this Court, at page 2, states, "[t]he history of the case and the nature of the appeal are correctly stated by the Commonwealth. *So too are the facts*, except for

Accordingly, we affirm the order of the Court of Common Pleas of Montgomery County.

### ORDER

AND NOW, this 15th day of December, 1994, the September 20, 1993 order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.

SILVESTRI, Senior Judge, dissenting.

At the hearing before the Court of Common Pleas of Montgomery County (trial court) on September 20, 1993, the trial court denied DOT's motion to quash as untimely William Paul's (Paul) appeal from the one year suspension of his operating privilege. The trial court, after hearing the appeal on the merits, sustained the appeal and ordered DOT to rescind its suspension of Paul's license.

DOT's appeal to this Court does not challenge the trial court's sustaining Paul's appeal on the merits. The only challenge by DOT is that the trial court erred in denying its oral motion to quash Paul's appeal, thus the merits of the appeal should not have been reached by the trial court. Because I believe that the appeal of Paul, on the record herein, was untimely and his appeal should have been quashed by the trial court for lack of jurisdiction, I file this dissent.

The facts are not in dispute and are set forth in DOT's brief at pp. 4–6 as follows:[1]

By official notice dated and mailed March 15, 1993, DOT notified Paul that his operating privilege was scheduled to be suspended for one year, pursuant to 75 Pa. C.S. § 1547(b)(1), as a result of his reported refusal to submit to chemical testing. On or about April 19, 1993, five days after the last date on which a timely statutory appeal of the March 15, 1993, notice of suspension could have been taken, Paul filed a statutory appeal from that notice of suspension. The appeal petition bears a

the Commonwealth's statements about its objection to hearsay testimony." (Emphasis added). We omit those facts set forth in DOT's brief concerning its hearsay objection.

time-stamp from the Montgomery County prothonotary's office showing that the petition was filed at 11:57 a.m. on April 19, 1993. The prothonotary's docket entries note the date of commencement of the appeal as April 19. In his petition, Paul acknowledged receiving the Department's March 15, 1993, notice of suspension. A *de novo* hearing was held before Judge Rossanese on Paul's statutory appeal on September 20, 1993. At that hearing, the Department's trial counsel moved the (sic) quash Paul's appeal as having been filed five days late. Paul's counsel, Michael W. Cassidy, testifying under questioning from an associate, conceded that April 14, 1993 was the last day on which Paul's appeal could have been timely filed. He testified that on April 12, 1993, a Monday, he mailed the appeal to the Montgomery County prothonotary from the Flourtown post office. Cassidy presented a proof of mailing dated April 12, 1993. Cassidy also identified his cover letter, dated April 12, 1993, and a copy of the filing fee check also dated April 12.

Cassidy testified that it is his normal practice to mail documents to be filed with the court. He further testified that this is the filing method he routinely uses and that he usually receives a copy dated two days after the day of mailing. When he did not receive such a copy, Cassidy said he went to the prothonotary's office on April 19, 1993, five days after the appeal period had expired, and found the appeal in a pile of work to be done. He said he was told it was going to be filed that day. Cassidy claimed that he was provided with written information from the first deputy prothonotary that the office had an unusually heavy backlog ... No testimony or evidence was presented to establish when the appeal was actually received by the prothonotary's office.

Initially, it is significant to note the procedural posture of this matter at the time of the trial court's disposition of DOT's motion to quash. The docket entries, at r.r. 1a, reflect that Paul's appeal was docketed at # 93–08044, the "Date Commenced" being 04/19/93. The docket further reveals that the matter was scheduled for hearing in July

and again in August of 1993 both of which were continued until September 20, 1993 when the matter was heard.

Neither the docket entries nor the record reveals any filing by Paul, on or after April 19, 1993, to have the record corrected to reflect that the appeal was actually received by the prothonotary on or before April 14, 1993, the final filing date. Likewise, the docket entries and the record are absent a petition by Paul to the trial court to consider the appeal nunc pro tunc. Additionally, the transcript of the hearing before the trial court reveals that DOT orally motioned to quash Paul's appeal for being untimely to which the Court replied, "[a]ll right." (R.R. 9a). The record then demonstrates that Michael Cassidy addressed the court as follows:

Your honor, I have Michael Archie up here as my associate, and *he is going to question me as to what I did as far as the filing of this appeal.*
(Emphasis added).

Neither at this time, before Cassidy began to testify, did either Cassidy or Archie present to the trial court in writing or orally a motion to have the appeal filed nunc pro tunc, nor did either do so prior to the conclusion of the hearing.

The trial court, in its opinion filed on January 5, 1994 stated as follows:

Mr. Paul's appeal should have been filed within thirty days, which would have been April 14, 1993. However, it was not filed until April 19, 1993. On September 20, 1993, Mr. Paul appeared before the undersigned for his license suspension appeal hearing. At the time, the Commonwealth moved to Quash the Appeal as late. After hearing, the undersigned *found a breakdown in the Court process and allowed the motorist's appeal.*

.    .    .    .    .

The reasons for this Court's decision are clearly stated in the license suspension Notes of Testimony dated September 20, 1993 on pages 8, 9 ...
(R.R. 54a, 55a).

Pages 8 and 9 of the notes of testimony, referenced by the trial court provide:

THE COURT: Let the record reflect that I find that Mr. Cassidy did, in fact, mail the appeal within sufficient time that it

*could* have gotten to the Prothonotary and filed.

> *I do find, as a matter of fact, that the appeal had gotten to the Prothonotary's office in sufficient time for filing within the deadline.*
>
> I find, as a matter of fact, by virtue of the Easter holidays, there was sufficient breakdown in the Court system which caused this appeal not to be filed in the appropriate time,[2] and it was a breakdown that was occasioned through no fault of Mr. Cassidy or his client.

(R.R. 15a). (Emphasis added).

The trial court, consistent with the assertions of Paul, determined, not that the appeal was untimely filed and was, nonetheless, permissible as a nunc pro tunc appeal, as the majority herein treats the matter, but rather, that the appeal was *received* by the prothonotary on or before April 14, 1993, i.e., the filing deadline date.[3] However, the only evidence of record demonstrating when the appeal was *received* by the prothonotary in this matter is the April 19, 1993 date/time stamp which was affixed thereto by the prothonotary's office.

First, the mailing date of an appeal is neither critical nor relevant when determining the date and time of receipt by the prothonotary's office. *See Walsh v. Tucker,* 454 Pa. 175, 312 A.2d 11 (1973). Additional-ly, absent any evidence of when the document was actually received, the date/time stamp appearing on a document is presumptive evidence of when the document was actually received. A person who seeks to establish that a document was timely, notwithstanding a date/time stamp which appears thereon showing untimeliness, has the burden of demonstrating through competent, credible evidence, that the document was actually *received* by the prothonotary within the filing period. *See Appeal of Farrell,* 69 Pa.Commonwealth Ct. 32, 450 A.2d 266 (1982); *Getz v. Pennsylvania Game Commission,* Pa.Commonwealth Ct., 475 A.2d 1369 (1984).

Here, contrary to the trial court's findings, set forth hereinabove that Paul's appeal "had gotten to the Prothonotary's office in sufficient time for filing within the deadline," there is no evidence of record other than the date/time stamp affixed thereto by the prothonotary of when the appeal was *received.* Accordingly, the trial court's failure to grant DOT's motion to quash Paul's appeal was in error and I would vacate the trial court's order and remand with direction to quash Paul's appeal.

---

**2.** It should be noted that Good Friday was on April 9 in 1993 and Easter was on Sunday, April 11, 1993. While it is true that Good Friday was a state holiday and the courts, and its offices, were closed, Easter was, as always, on a Sunday when the courts are closed. Additionally, according to attorney Cassidy's testimony, he did not mail the appeal until April 12, 1993, after the Easter holidays had ended and there is no evidence in the record of what the Court's work load was during the previous week beginning Monday, April 5, 1993.

**3.** It should also be noted that the majority relies upon the Supreme Court's decision in *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979) in affirming the trial court's decision. However, *Bass* was a case wherein the appellant sought leave to file an appeal nunc pro tunc for an, admittedly, untimely filed appeal. As noted, this was not the situation here. Rather, Paul claimed, and the trial court found, that his appeal was timely *received* by the prothonotary's office.

Nevertheless, in *Bass,* the Supreme Court carved out an exception for the prohibition of allowing untimely appeals nunc pro tunc where, as in *Bass,* it was demonstrated that the appeal was untimely because of the non-negligent failure to file the appeal in a timely manner due to counsel's secretary's illness, not, as the majority states "by an operational breakdown of the attorney's internal office procedures." The evidence adduced in *Bass* of such non-negligent failure to file the appeal in a timely manner was presented through counsel's secretary who testified concerning her illness and its relation to the untimely filing. Here, the majority states that "the present matter concerns a breakdown in a prothonotary's filing office operations, a situation more readily verifiable and substantiated by the record than in *Bass....*" However, the only testimony presented in this case of a breakdown in the prothonotary's filing office operations was the hearsay testimony given by attorney Cassidy of what the first deputy prothonotary told him. Accordingly, it is not apparent that the situation here is more readily verifiable and substantiated than was the case in *Bass.*