IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra A. Gallagher, : 
            : No. 2742 C.D. 2015
            Petitioner : Nos. 2751-2758 C.D. 2015
            : Submitted: October 14, 2016
            v. :
            :
Unemployment Compensation :
Board of Review, :
            :
            Respondent :


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED: March 17, 2017


        Debra A. Gallagher (Claimant) petitions for review from nine orders of the Unemployment Compensation Board of Review (Board), dated November 24, 2015, which affirmed nine decisions of a Referee dismissing as untimely Claimant's appeals from more than thirty Notices of Determination under Section 501(e) of the Unemployment Compensation Law (Law).[1] For the reasons that follow, we are constrained to affirm.

---

      [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §821(e). Section 501(e) of the Law provides in relevant part:

> (e) Unless the claimant ... files an appeal with the board, from the determination contained in any notice required to be furnished by the department ... within fifteen calendar days after such notice ...

**(Footnote continued on next page…)**

Claimant filed for unemployment compensation benefits on various occasions between 2007 and 2014 while working for Aramark Sports, LLC (Employer). On July 8, 2014, Employer faxed its records of Claimant's wage information for the years 2007 through 2014, which reflected higher earnings than Claimant had reported for many benefit weeks. Certified Record (C.R.) Item Nos. 3, 6.

Between July 21 and August 1, 2014, the Erie Service Center sent five Advance Notices to Claimant, alerting her to the possibility that she had been overpaid for numerous benefit weeks specifically identified in the notices, during 2007, 2008, 2009, 2011, 2012, 2013, and 2014.[2] Each of the notices requested that Claimant complete an attached questionnaire explaining the discrepancies in reported earnings and return it to the claims office by a specified date. Each notice also advised Claimant that her failure to return the questionnaire may result in the termination of benefits and the assessment of an overpayment for benefits already paid. The notices informed Claimant that she could call the claims center office at the telephone number provided if she wished to request a telephone interview. Claimant did not respond to any of these notices.

---

**(continued…)**

was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

[2] Two Advance Notices dated July 21, 2014, referenced weeks ending October 20, 2012 through May 25, 2013, and weeks ending October 12, 2013 through June 21, 2014. An Advance Notice, dated July 29, 2014, referenced weeks ending October 8, 2011 through April 21, 2012. Two Advance Notices, dated August 1, 2014, referenced weeks ending September 22, 2007 through August 16, 2008, and weeks ending September 20, 2008 through August 22, 2009.

By six separate Notices of Determination mailed on July 9 and 10, 2014, the Service Center informed Claimant of office errors that caused non-fault overpayment[3] in 2012 and 2013, totaling $1454.00, and $20.00 in non-fault overpayment related to the exhaustion of Claimant's dependents' allowance. The last day for Claimant to appeal these determinations was July 24, 2014, and July 25, 2014, respectively.

Thereafter, over the course of three days, from August 20, 2014 through August 22, 2014, the Service Center sent Claimant more than twenty Notices of Determination.[4] C.R. Item No. 8. All told, the Service Center established fault overpayments[5] totaling $12,396.00[6] and assessed approximately

---

[3] Section 804(b)(1) of the Law provides for the establishment of non-fault overpayments and states:

> Any person who other than by reason of his fault has received with respect to a benefit year any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year, in accordance with the provisions of this paragraph.

43 P.S. §874(b)(1).

[4] Claimant asserts that she received a total of twenty-six notices during that three-day period. There are some discrepancies between the Claim Records (C.R. Item No. 1) and the Notices of Determination (C.R. Item No. 8) as to exactly how many notices were sent. For purposes of this Court's analysis, the exact number is not necessary.

[5] Section 804(a) of the Law provides for the establishment of fault overpayments and states, in pertinent part:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so

**(Footnote continued on next page…)**

3

$1,817.00 in penalties[7] for claim weeks ranging from September 29, 2007 through June 21, 2014. *Id.* The last day for Claimant to appeal these determinations was, respectively, September 4, 2014, September 5, 2014, and September 8, 2014.

Claimant filed appeals for each of the determinations on September 14, 2015; a Statement of Balance Due mailed September 4, 2015, was attached to the appeals and stated that Claimant owed $8,426.32. C.R. Item No. 9. The Referee's office addressed Claimant's appeals in the nine aforementioned decisions.

The Referee held a hearing on October 16, 2015, to determine whether Claimant had filed valid and timely appeals under Section 501(e) of the Law. Claimant appeared *pro se* and Employer did not attend. Claimant testified that her appeals were delayed because she was caring for an autistic, special needs child who requires attention twenty-four hours a day, seven days a week; she received some, but not all, of the notices that were sent; and she believed that some

---

**(continued…)**

> received by him and interest at the rate determined by the Secretary of Revenue. . . .

43 P.S. §874(a).

[6] This includes a fault overpayment of $325.00 under the federal Emergency Unemployment Compensation (EUC) Act of 2008, Title IV of the Supplemental Appropriations Act of 2008, P.L. 110–252, 122 Stat. 2323, Sections 4001–4007, 26 U.S.C. §3304 note.

[7] Under Section 801(c) of the Law, penalties in the amount of 15% of the overpaid compensation shall be assessed against a claimant who "makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment . . . and as a result receives compensation to which he is not entitled. . . ." 43 P.S. §871(c).

of these determinations had been previously adjudicated.  Notes of Testimony at 6-7.[8]

---

[8] Claimant testified in relevant part, as follows:

> R[eferee]:     Okay.  So did you receive this Notice of Determination, all these Notices?
> C[laimant]:    Some of them I have received; some of them I have not.
> R:             Okay.  So when you received some of them, did you read them to see what they had to say?
> C:             I normally call them on the phone and I talk but they're giving me like different things to talk about.  They – when I asked them a question how is that, you know, because their pay cut is different from Aramark's.  Every time – before in the beginning I was going by my paystubs, by the amount on my paystubs.  They told me not to do . . .
> R:             I understand all of that.  Yes, I understand that but today's issue is for me to know whether you filed a timely appeal or not.  So after that, the other issues can be dealt with.  So today, let's concentrate and focus on why you did not appeal the Determinations in a timely manner.
> C:             Oh. The reason why I had an appeal – I have a nine-year-old son that's autistic.  He's a special need child.  He just started having seizures.
> R:             Okay.  He's autistic?
> C:             He's autistic.  He's a special need child.
> R:             Okay.  So though you received some of the Determinations, you were unable to appeal the Determinations?
> C:             Yes.
> R:             Why?
> C:             Because he was – yes, my son's a 24-hours person, you know, a child that I have to take care of.
> R:             So he needs your attention 24 . . .
> C:             24/7, yes.
> R:             Okay.  All right.  So that's the reason?  So . . .
> C:             Yes, that's the main reason and he was just hospitalized in August two days.  He had a very bad seizure.  He's been having seizures and I'm trying to like get like him . . .
> R:             I understand.

**(Footnote continued on next page…)**

(continued…)

C:    . . . kind of different tests done on him now because they don't know why he's having them now.

R:    Okay. Ma'am, the issue is the same for all nine cases.

C:    Yes.

R:    So for all nine cases, that's the reason, right, that you did not appeal the Determinations?

C:    Well, no, this is – I'm going to say – I'm not going to say that. I'm going to say about 2007, 2008, I did see a Referee here two years ago. They're bringing some old cases up actually from the time when I did see a Referee here and I did contact UC Service and I did told [sic] them about it.

R:    They are old.

C:    Yes. And I . . .

R:    [Inaudible] old.

C:    . . . also had talked to a person by a name of Julie up in Harrisburg, PA about the whole situation and I have not heard back from her neither [sic].

R:    All right. Okay.

C:    And I'm talking – these cases is [sic] old from like eight, seven, eight years ago and it should have been already cleared, not – should be prolonged and going and going and going.

R:    Okay.

C:    I mean I'm not going to dispute like if I – I know I'm not going to owe like they saying that I owe. I know that's impossible. But I do have my current paystubs.

R:    We won't need your current paystubs because we are talking a period in 2007, late 2007 and early 2008. So I don't know whether you have your paystubs or not.

C:    I don't have none [sic] of my paystubs. I do have my paystubs from like 2013.

R:    Okay.

C:    2014 and 2015 but all the rest I do not have.

R:    Okay. All right. If there is nothing further, ma'am, then I'm going to bring this hearing to a close. Okay?

C:    Okay.

The Referee found that the Notices of Determination were mailed to Claimant at her correct mailing address and were not returned as undeliverable; Claimant was not misinformed or misled regarding her right to appeal; and there was no evidence that the late filing was caused by fraud or its equivalent by the administrative authorities, a breakdown in the appellate system, or non-negligent conduct. Findings of Fact Nos. 2-3, 7, 8. Therefore, the Referee dismissed all nine appeals as untimely. Claimant appealed the Referee's decisions to the Board, asserting that these notices addressed "old claims" and that she was not able to speak as desired or to offer proof at the hearing before the Referee. C.R. Item No. 15.

The Board affirmed the Referee's decisions and issued its own findings of fact and conclusions of law. C.R. Item No. 16. The Board discredited Claimant's assertion that she did not receive some of the determinations and held that Claimant did not credibly overcome the presumption of receipt. *Id.* The Board also determined that Claimant did not credibly establish that caring for her son caused her to delay filing her appeals for more than a year. *Id.* The Board concluded that the filing of the late appeals was not caused by fraud or the equivalent by the administrative authorities, a breakdown in the appellate system, or non-negligent conduct and dismissed Claimant's appeals as untimely. *Id.*

On appeal to this Court,[9] Claimant argues that *nunc pro tunc* relief is appropriate due to the "unconscionable amount of paperwork" from the Service Center, which caused confusion and resulted in an administrative breakdown. She

---

[9] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

contends that the long delay between the claim years and the determination notices compounded her confusion, and that she believed these determinations were addressing matters that had been previously adjudicated.

However, Claimant's argument concerning administrative breakdown due to the number of Notices of Determination that were sent and the undue delay in their mailing was not raised before the Board and cannot be raised for the first time in this appeal. Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. §703(a); Pa. R.A.P. 1551(a); *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 611 (Pa. Cmwlth. 2011).

With respect to Claimant's argument that she thought that the notices related to prior claims, she directs our attention to a 2013 Referee decision which reversed and/or modified the Service Center's determinations for claim weeks in 2009, 2010, and 2011, which is appended to her Brief as Exhibit A. However, that decision is not part of the certified record of this appeal. It is settled that "[a]n appellate court is limited to considering only those facts that have been duly certified in the record on appeal. For purposes of appellate review, that which is not part of the certified record does not exist. Documents attached to a brief as an appendix or in a reproduced record may not be considered by an appellate court when they are not part of the certified record." *B.K. v. Department of Public Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012) (citations omitted). Accordingly, we may not consider this decision in our disposition of this appeal. Moreover, we note that the claim weeks addressed in the 2013 Referee's decision fall within the seven-year period discussed here, but are not the weeks at issue in this case.

Section 501(e) of the Law provides that a party has fifteen days to appeal a determination or it becomes final and the Board does not have the

requisite jurisdiction to consider the matter. *Hessou v. Unemployment Compensation Board of Review,* 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008). An appeal filed even one day after the fifteen-day appeal period is untimely. *Id.* The "failure to file an appeal within fifteen days, without an adequate excuse for the late filing, mandates dismissal of the appeal." *United States Postal Service v. Unemployment Compensation Board of Review,* 620 A.2d 572, 573 (Pa. Cmwlth. 1993).

The Supreme Court has emphasized that the remedy of an appeal *nunc pro tunc* or "now for then" is intended to restore the right to appeal only when it was lost as the result of extraordinary circumstances. *Union Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County,* 746 A.2d 581, 584 (Pa. 2000). To this end, *nunc pro tunc* relief may be warranted "where an administrative body acts negligently, improperly or in a misleading way." *Id.* Likewise, an appeal *nunc pro tunc* may be granted where the extraordinary circumstances causing the delay were the result of non-negligent conduct of the claimant or her counsel; if the appeal is brought within a very short time after the claimant or counsel learns of, and has an opportunity to address, the delay; and the untimeliness and the time period which elapses is very short in duration. *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996); *see also, UPMC Health System v. Unemployment Compensation Board of Review*, 852 A.2d 467 (Pa. Cmwlth. 2004) (discussing the need for a petitioner in an appeal *nunc pro tunc* to proceed with due diligence once she knows of the need to take action).[10]

---

[10] In *UPMC Health System*, the May 12, 2003 determination granting the claimant benefits was not mailed to the employer until June 18, 2003, well after the appeal deadline of
**(Footnote continued on next page…)**

In support of her assertions that *nunc pro tunc* relief is warranted in this case, Claimant cites several unreported decisions of this Court involving delay attributable to a breakdown in administrative process. However, the Board specifically found that Claimant was not misinformed or misled by the unemployment compensation authorities regarding her right or the necessity to appeal. C.R. Item No. 16. Moreover, Claimant testified that the reasons she did not file timely appeals were that she was overwhelmed with caring for her son and that she believed that these issues were previously adjudicated. Regardless of the number of notices that Claimant received, each advised her of the necessity to appeal, and Claimant's misunderstanding of her duty in this regard is not sufficient to meet the burden required for the grant of a *nunc pro tunc* appeal. *See, e.g., Finney v. Commonwealth,* 472 A.2d 752, 753-54 (Pa. Cmwlth. 1984) (holding that a claimant's inability to understand the proper procedure does not excuse the untimely filing of an appeal).

---

**(continued…)**

May 27, 2003, and it was sent to an incorrect address. The employer received it on June 19, 2003, and filed an appeal twelve days later, on July 1. 2003. The employer argued it was entitled to appeal *nunc pro tunc*, but the Board concluded that the employer failed to meet its duty to appeal within a very short duration, as required by *Cook*, because it waited twelve days to appeal.

On further appeal, we reversed the Board's order. We acknowledged our holding in *Stanton v. Department of Transportation, Bureau of Driver Licensing*, 623 A.2d 925 (Pa. Cmwlth. 1993), denying a request for *nunc pro tunc* relief because the petition was filed eleven days after the law firm employee responsible for filing appeals had returned to work. Although the twelve day delay in *UPMC Health System* was of longer duration, we observed that prior cases involved periods of delay beyond the statutory appeal period. We held that the employer in *UPMC Health System* could not be deprived of the full fifteen-day period provided by statute, giving it until at least July 3, 2003, in which to appeal.

Accordingly, the Board is affirmed.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra A. Gallagher,                          :
                                             : No. 2742 C.D. 2015
                        Petitioner           : Nos. 2751-2758 C.D. 2015
                                             :
            v.                               :
                                             :
Unemployment Compensation                    :
Board of Review,                             :
                                             :
                        Respondent           :


O R D E R


AND NOW, this 17th day of March, 2017, the orders of the Unemployment Compensation Board of Review, dated November 24, 2015, at Nos. B-584418. B-584419, B-584420, B-584421, B-584422, B-584423, B-584424, B-584425, B-584426, are AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge