IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Tessitor,                         :
                    Appellant           :
          v.                            :     No. 162 C.D. 2024
                                        :
Town of McCandless and                  :     Submitted: March 4, 2025
Town of McCandless Code                 :
Appeals Board                           :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: April 7, 2025


In this appeal, David Tessitor (Appellant) appeals from the January 18, 2024 order of the Court of Common Pleas of Allegheny County (trial court) affirming on reconsideration that court's December 20, 2023 decision and order that denied Appellant's petition for appeal *nunc pro tunc* from a decision of the Town of McCandless Code Appeals Board (Board). The trial court also determined that the Board's motion to dismiss Appellant's petition to appeal *nunc pro tunc* was moot.

## I.      Factual and Procedural Background

On July 28, 2023, the Town Code Enforcement Officer for the Town of McCandless (Town) sent a Notice of Demolition to Appellant pertaining to a single-family structure (Structure) located at 1100 Woodland Road, Pittsburgh, Pennsylvania.

(Original Record (O.R.) at 20-27.) [1,2] The Notice informed Appellant that as a result of a long history of violation notices dating back to at least June 14, 2014, the Town had determined that as of August 19, 2019, the Structure on his property was unfit for human occupancy and had been classified as a condemned structure pursuant to Section 715.08 of the Town Property Maintenance Code, § 715.08 Town of McCandless, Pennsylvania, Property Maintenance Code, (7-23-2012). (2019 Condemnation Notice). *Id.* at 20-21.

The Notice further explained that due to Appellant's failure to complete the repairs required by the 2019 Condemnation Notice, a subsequent inspection of the property was carried out on April 23, 2023, at which time the Town Code Enforcement Officer determined that the Structure was dangerous to the life, health, property and/or safety of the public or the occupants because it was so damaged and structurally unsafe that it was likely of partial or complete collapse. Therefore, the Notice informed Appellant that the Structure was ordered demolished. *Id.* at 21. The Notice ordered Appellant to provide a detailed plan to demolish the Structure and remove it from the property on or before August 30, 2023, or the Town would cause the Structure to be demolished and removed. *Id.* In the event that this occurred, the Town would charge the cost of demolition and removal, together with a 10% penalty, against the property as a lien. The Notice also stated that the Structure would be demolished and removed by November 1, 2023. *Id.* The Notice further informed Appellant that

> [i]t is unlawful for the owner of any dwelling unit or structure
> who has received a compliance order or upon whom a notice
> of demolition or violation has been served to sell, transfer,
> mortgage, lease or otherwise dispose of such dwelling unit or

---

[1] Because the original record in this matter was submitted electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

[2] At the time the demolition decision was made by the Town, Appellant was the record owner of the property on which the Structure was erected.

structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee, transferee, mortgagee, or lessee a true copy of any compliance order or notice of violation issued by the Town Code Enforcement Officer and shall furnish to the Town Code Enforcement Officer a signed and notarized statement from the grantee, transferee, mortgagee, or lessee acknowledging the receipt of such compliance order or notice of violation and fully accepting responsibility without condition for making the corrections, repairs or remediation required by such compliance order or notice of violation.

*Id.* at 22.[3]

Finally, Appellant was advised that he had a right to appeal the Notice to the Town's "UCC Board of Appeals" within 20 days of its receipt. *Id.* After receiving the Notice, Appellant timely filed an appeal to the Board.

### A. *Proceedings Before the Board*

On September 14, 2023, the Board held a public hearing regarding Appellant's appeal, at which Appellant presented testimony and evidence in support of his position that the Structure should not be demolished. *Id.* at 8. On October 12, 2023, the Board issued a decision and order containing findings of fact and reasons for its decision. (Board's Decision). *Id.* at 7-20. The Board denied Appellant's appeal, finding that Appellant did not "clearly articulate which of the three grounds under [the Town's Property Maintenance Code] his appeal was based upon" and that Appellant "failed to establish entitlement to any of the three grounds for appeal set forth in the

---

[3] The Notice then stated that noncompliance with the Notice shall constitute a violation of the Property Maintenance Code and may result in a fine of not less than $300 nor more than $1,000, plus court costs including attorneys' fees and potential imprisonment. Finally, it stated that each day that a violation continues shall constitute a separate violation which may subject the Appellant to a separate fine for each day and each violation. (O.R. at 22.)

[Code]."[4]  *Id.* at 17.  The Board also held that "[t]he Town has provided [Appellant] with ample time and opportunity to cure the defects and violations on the property, but [Appellant] has been unable or unwilling to cure such defects" and "[a]s such, the Structure remains an extreme safety hazard to the general public and demolition is the only option available to remediate the danger posed by the Structure."  *Id.* at 18.

The Board's decision was served on Appellant, who concedes that he was properly notified of the Decision.  (Appellant's Br. at 7.)  While Appellant had the right to appeal the Board's Decision to the trial court within 30 days, or by Monday, November 13, 2023, he did not do so.  Appellant avers that he filed his appeal late because "as [he] was ascertaining his next steps after the receipt of the Decision, [he] relied on information on the Town website . . . ."  *Id.* at 7.  More specifically, he avers that he relied upon a webpage published by the Town labeled "CODE ENFORCMENT PROCESS" which he alleges specifies that an appeal should be directed to the magisterial district judge.  *Id.*  Appellant further contends that at some point prior to November 6, 2023, he contacted the office of the local magisterial district court to inquire as to whether he could appeal the Board's Decision there and was told that he could not.  *Id.*  Appellant then contacted the office of Attorney Alexis Wheeler, Solicitor to the Board, by email to inquire where he could appeal the Board's Decision. In response, Attorney Wheeler informed Appellant on the same day, November 6, 2023, that the proper forum to file an appeal was the Court of Common Pleas.  *Id.* at 8.

At the time that Appellant was informed that his appeal should be filed with the trial court, seven days remained in his appeal period.  However, Appellant

---

[4] Under the Code "[a]n application for appeal shall be based on a claim that (1) the true intent of this [C]ode or the rules legally adopted thereunder have been incorrectly interpreted, (2) the provisions of this [C]ode do not fully apply, or (3) the requirements of this code are adequately satisfied by other means."  (Code, § 715.11; Reproduced Record (R.R.) at 16.)

took no action to bring the matter to the trial court until over a month after his statutory appeal period had lapsed.  (O.R. at 1-6.)

## B.  Proceedings Before the Trial Court

On December 19, 2023, Appellant filed a late Petition for Appeal *Nunc Pro Tunc* with the Allegheny County Department of Court Records (Petition) seeking permission to file an appeal *nunc pro tunc* from the Board's Decision.[5]  *Id.*  While the Petition was not properly served on the Town or the Board, the trial court scheduled a hearing on December 20, 2023, which was attended by Appellant and by legal counsel for the Town and the Board.  *Id.*

In his Petition, Appellant argued that the Board "failed to inform [him] of his right to appeal the order to the Allegheny County Court of Common Pleas [trial court]" and that "the Town website instead indicated that decisions of the [ ] Board were appealable to the local magistrate and from there could be appealed to the [trial court]."  *Id.* at 3.  He therefore argued that "[b]y reason of the negligent conduct of the Town [], [Appellant] was prevented from learning of a need to file an appeal with the [trial court]."  *Id.*  He further argued that "the failure of the Town [] to properly indicate the procedure for appeal and instead providing ambiguous information, which misled [Appellant,] constitutes a material breakdown in the agency's operations which justifies the allowance of an appeal at this time."  *Id.* at 4.  Following the hearing, the trial court issued an order denying Appellant's request to appeal *nunc pro tunc* and joining the Town and Board as indispensable parties to the matter.  *Id.* at 37.[6]

---

[5] According to the Town and the Board, a contractor hired by the Town had begun to prepare the Structure for demolition on December 16, 2023.  (O.R. at 183.)

[6] The Town and the Board assert that on December 22, 2023, Appellant conveyed the property underlying the Structure to Halley Pittsburgh Properties, LLC, by quitclaim deed.  However, according to the Town, neither Appellant nor Halley Pittsburgh Properties, LLC provided the Town
**(Footnote continued on next page…)**

5

On January 2, 2024, Appellant filed a Motion to Reconsider the trial court's December 20, 2023 order denying his request to file an appeal *nunc pro tunc*. *Id.* at 39. The Motion repeated the arguments previously made by Appellant regarding the appropriateness of *nunc pro tunc* relief. *Id.* at 41. On January 5, 2024, the Town filed an Answer to the Motion to Reconsider. *Id.* at 74-78. On January 8, 2024, after hearing argument remotely, the trial court issued an order granting reconsideration.[7] *Id.* at 82. On the morning of January 10, 2024, the Structure was demolished by the contractor. On the same day, Appellant filed an Emergency Motion to Stay Demolition which requested that the status quo be maintained pending the outcome of the litigation. *Id.* at 87-89. On January 11, 2024, the trial court heard Appellant's Emergency Motion for Stay and ordered the Town to take no further action with respect to the property. *Id.* at 234.

On January 11, 2024, the Town and Board filed a Motion to Dismiss Appellant's Petition to Appeal *Nunc Pro Tunc*, *id.* at 239, as well as a brief in opposition to Appellant's Petition to Appeal *Nunc Pro Tunc* and in Support of a Motion to Dismiss. *Id.* at 178. In their Motion, the Board and Town argued that Appellant had not established a right to *nunc pro tunc* relief. *Id.* at 193-199. They also argued that as a result of Appellant's sale of the property, Appellant no longer had any legal or other direct interest in the underlying property and therefore lacked standing to file the Petition to Appeal *Nunc Pro Tunc*. *Id.* at 240. They further asserted that the purchaser of the property had demonstrated no legal interest in the underlying property. In

with a signed and notarized statement acknowledging Halley Pittsburgh Properties, LLC's receipt of the Notice and accepting the responsibility, without condition, for making the corrections required by the Notice pursuant to Section 715.07(d) of the Property Maintenance Code, rendering the sale unlawful. (Appellee's Br. at 13.)

[7] The trial court directed the Town and Board to file a brief in opposition to the Petition by January 11, 2024, and directed Appellant to file a reply brief by January 16, 2024.

addition, they argued that because the Structure had been demolished, the trial court could not grant Appellant the ultimate relief requested and, therefore, the matter should be dismissed as moot. *Id.* at 242.

*C. Trial Court Opinion and Order*

On January 18, 2024, the trial court issued an order affirming its December 20, 2023 decision finding Appellant had failed to establish a right to *nunc pro tunc* relief. *Id.* at 273. The trial court's order also held that the Town's Motion to Dismiss was moot. The trial court issued its Pa.R.A.P. 1925(a) opinion on April 22, 2024. In its opinion, it stated:

> During the pendency of [the trial c]ourt's reconsideration of its denial of *nunc pro tunc* relief, the Town filed a Motion to Dismiss Petition to Appeal *Nunc Pro Tunc* based on mootness and lack of standing. As the [c]ourt did not grant a late appeal based on the facts and legal framework applicable to the request for *nunc pro tunc* relief, the Motion to Dismiss was rendered moot. This Opinion addresses the reasons for the court's substantive decision to deny *nunc pro tunc* relief.

(Trial Ct. Op. at 3 n.2.)

In its opinion, the trial court noted that no additional facts relative to the late appeal issue were presented to the trial court between the court's initial denial of the Petition to Appeal *Nunc Pro Tunc* and its reconsideration of the denial and that Appellant did not dispute that he had been properly notified of Board's decision for which he now seeks permission for a late appeal. (Trial Court Op. at 3.) The trial court took note of Appellant's argument that he relied upon information on the Town website and attempted to further appeal to the magisterial district judge. With respect to the webpage and graphic upon which Appellant claims to have relied, the trial court stated that "nothing on the webpage or any other document introduced indicates that an appeal from a decision of the Board should be filed with the local magisterial district judge." *Id.* at 4. The trial court further noted that no later than November 6, 2023, Appellant

had reason to know that his interpretation of the information from the webpage was incorrect and, as of that date, seven days remained in the appeal period.

The trial court then set forth the standard for *nunc pro tunc* relief noting that it generally is only granted in the event of extraordinary circumstances, such as fraud or a breakdown in the court's operations. In addition, it noted:

> [A]n appeal *nunc pro tunc* may be granted in some cases where an appeal was untimely filed because of non-negligent circumstances related to appellant, appellant's counsel or an agent of appellant's counsel. For an appeal *nunc pro tunc* to be granted on that basis, the appellant must prove that[:] (1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to appellant or appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay. The exception for allowance of appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly established that he attempted to file an appeal, but unforeseeable and unavoidable events precluded him from actually doing so. *Fischer v. UPMC Northwest*, 34 A.3d 115, 120 n.2 (Pa. Super. 2011) (internal citations and quotation marks omitted).

*Id.* at 5. The trial court concluded that Appellant's actions "cannot be characterized as non-negligent." *Id.* at 6. It noted that even if Appellant's erroneous interpretation of the information on the Town's website was considered to be non-negligent, he was "redirected to the proper tribunal with ample time remaining in the appeal period to file a timely appeal." *Id.* The trial court further noted that Appellant did not request permission to file his late appeal shortly after his appeal period lapsed, but instead waited over a month to file it and provided no explanation for the delay. *Id.* Therefore, the trial court ruled that the request for relief *nunc pro tunc*, "which can only be granted in extraordinary circumstances, was properly denied." *Id.*

8

Appellant timely appealed to this Court.

## II. Discussion

On appeal, Appellant argues that the trial court abused its discretion and committed an error of law by failing to grant his Motion for Appeal *Nunc Pro Tunc*. Initially, we note:

> [O]ur standard of review in determining the propriety of a denial of an appeal *nunc pro tunc* is whether the trial court abused its discretion. *Commonwealth v. Stock*, 679 A.2d 760, 762 (Pa. 1996). An abuse of discretion has been defined by [our Supreme] Court as "not merely an error of judgment." *Kelly v. County of Allegheny*, 546 A.2d 608, 610 (Pa. 1988) (citations omitted). [Our Supreme] Court further noted that where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Id.*

*Union Electric v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 583 (Pa. 2000).

Generally, "appeal periods are jurisdictional and may not be extended as a matter of grace or mere indulgence; otherwise there would be no finality to judicial action." *City of Philadelphia v. Tirrill*, 906 A.2d 663, 665 (Pa. Cmwlth. 2006). In other words, the failure to file a timely appeal deprives a court of jurisdiction. *Gomory v. Department of Transportation, Bureau of Motor Vehicles,* 704 A.2d 202, 204 (Pa. Cmwlth. 1998). Nevertheless, there are certain exceptions to this rule, such as an appeal *nunc pro tunc*. However, the party seeking *nunc pro tunc* relief carries "a heavy burden to justify an untimely appeal." *Blast Intermediate Unit No. 17 v. Unemployment Compensation Board of Review*, 645 A.2d 447, 449 (Pa. Cmwlth. 1994).

"*Nunc pro tunc* relief may be granted only (1) in circumstances in which a party failed to make a timely filing as a result of fraud or breakdown in the court's

operations, or (2) where a party, a party's counsel, or an agent of the party has failed to comply with a filing deadline due to non-negligent circumstances." *Triple Crown Corporation, Inc. v. Lower Allen Township*, 327 A.3d 748, 754 (Pa. Cmwlth. 2024). "[*N*]*unc pro tunc* relief may be afforded only where 'extraordinary' circumstances exist to warrant it, and the burden of establishing the existence of such circumstances is on the party seeking *nunc pro tunc* relief." *Harris v. Unemployment Compensation Board of Review*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021).

Moreover, in *Tirrill*, this Court stated:

> An appellant seeking permission to file a *nunc pro tunc* or "now for then" appeal **must proceed with reasonable diligence once he knows of the necessity to take action**. *Schofield v. Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 510 (Pa. Cmwlth. 2003). Indeed, an application must be filed within a reasonable time after the occurrence of the extraordinary circumstance. *Nixon* [*v. Nixon*, 198 A.2d 154 (Pa. 1938)]; *Amicone v. Rok*, 839 A.2d 1109 (Pa. Super. 2003) (*nunc pro tunc* application denied because it was filed four months after petitioner's notice of appeal was rejected); *see also Smith v. Department of Transportation, Bureau of Driver Licensing*, 749 A.2d 1065 (Pa. Cmwlth. 2000) (*nunc pro tunc* application denied where appeal was one day late and petitioner lacked evidence to corroborate reason for delay); *Lajevic* [*v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 718 A.2d 371 (Pa. Cmwlth. 1998)] (*nunc pro tunc* application denied where appeal and application were filed 27 days late and petitioner lacked evidence to corroborate explanation for delay); *Stanton* [*v. Department of Transportation, Bureau of Driver Licensing*, 623 A.2d 925 (Pa. Cmwlth. 1993)] (*nunc pro tunc* application denied based on an 11-day unexplained delay in filing the appeal and application.)

*Tirrill*, 906 A.2d at 667 (emphasis added).

Appellant contends his interpretation of a webpage labeled "Code Enforcement Process" led him to conclude that his appeal of the Board's decision

10

should be filed with the magisterial district judge. He then asserts that "[w]hen a local agency . . . has misleading information on a website outlining how an appeal can be taken, it can be considered a breakdown in operations." (Appellant's Br. at 9.) We find that this argument has no merit.

When the trial court considered this argument, it stated that "[n]otably, the graphic relied upon appears to be a guide regarding the Town's code enforcement process, but nothing on the webpage or any other document introduced indicates that an appeal from a decision of the Board should be filed with the local magisterial district judge." (Trial Ct. Op. at 4.) In fact, the graphic at issue makes no mention at all of the Board or of condemnation notices or demolition orders. (O.R. at 28.)

Appellant further argues that the Board failed to properly provide notice to him, although he concedes that due process does not require an administrative agency to provide a party with notice of the right to appeal from the agency's decision. (Appellant's Br. at 12.) In addition, we note that the Local Agency Law, which governs the contents and service of adjudications of local agencies such as the Board, requires only that "adjudications of a local agency shall be in writing, shall contain findings and reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail." 2 Pa.C.S. § 555.

It is well established that in order to be entitled to *nunc pro tunc* relief, a litigant must proceed with reasonable diligence once he knows of the necessity to take action. *Tirrill*, 906 A.2d at 667. In the trial court's recitation of the facts, it stated that "[n]o later than November 6, 2023, [Appellant] had reason to know that his interpretation of the information from the website was incorrect." (Trial Ct. Op. at 4.) In finding that "[Appellant's] actions cannot be characterized as non-negligent," the trial court reasoned:

11

> Even if [Appellant's] initial delay could be excused because of the information posted on the website, the Board's counsel gratuitously redirected him to the proper tribunal with ample time remaining in the appeal period to file a timely appeal. Equally fatal was that despite receipt of this clarifying information, [Appellant] still did not request permission to file a late appeal shortly after the expiration date. Instead, he did not file his Petition until December 19, 2023, over a month after his statutory period to appeal lapsed. No explanation or justification was provided for this delay.

*Id.* at 6.

Given that there was no fraud or breakdown in the court's operations or the operations of the Board, we next consider the possible existence of "non-negligent circumstances" pertaining to Appellant's failure to comply with his filing deadline, or to his failure to request to file late soon after his appeal period had lapsed. Under the facts of this case, we agree with the trial court's finding that Appellant's actions cannot be characterized as non-negligent. Not only did Appellant rely on an erroneous interpretation of the Town's website, but when he was provided with correct information while there was still time left in the appeal period, he did not file an appeal. As the trial court stated, "[e]ven if [Appellant's] initial delay could be excused because of information posted on the website, the Board's counsel gratuitously redirected him to the proper tribunal with ample time remaining in the appeal period to file a timely appeal." *Id.* Rather than do so, he waited over a month after his statutory appeal period had lapsed, until December 19, 2023, to file his Petition requesting permission to file his appeal *nunc pro tunc*. Even now, Appellant has provided no explanation for this delay.

We therefore agree with the trial court that Appellant did not proceed with reasonable diligence once he knew of the necessity to take action and has not demonstrated the type of either extraordinary or non-negligent circumstances necessary

12

to prove an entitlement to *nunc pro tunc* relief.  Because of our resolution of this issue, we also affirm the holding of the trial court's order that Town's Motion to Dismiss the Petition to Appeal *Nunc Pro Tunc* is moot.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Tessitor, :
           Appellant :
     v. : No. 162 C.D. 2024
            :
Town of McCandless and :
Town of McCandless Code :
Appeals Board :

## ***ORDER***

AND NOW, this 7th day of April, 2025, the January 18, 2024 Order of the Court of Common Pleas for Allegheny County is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge